YVONNE T. RODRIGUEZ, Justice
In this pro se eviction case, Appellant Deen T. Williamson raises sixteen issues on appeal. As best as we can discern, her main legal points of error involve a plea in intervention, a directed verdict, and a plea to the jurisdiction. We affirm.
Factual Background
Appellant Williamson moved to Irving View Trailer Park (the "Trailer Park") in Irving, Texas sometime in 2002, with her trailer and a storage building. Appellant did not have a written lease but a month-to-month oral lease with the Trailer Park. When Appellant moved into the Trailer Park, Loran W. May was the owner. C&R Management, Carl Evans and Robin Evans (collectively, "C&R"), managed the Trailer Park for Mr. May.
Mr. May died in December 2010. In his will, the Trailer Park was bequeathed to High Plains Children's Home & Family Services, Inc. ("HP Home"), an orphanage in Amarillo, Texas. At that time, HP Home had a board of directors and their executive director was Craig Howard ("Howard"). May's will named Howard as the executor of his estate. C&R continued to manage the Trailer Park after May's death.
HP Home's board of directors and Howard decided to close the Trailer Park and sell the property given they decided it was not in the orphanage's best interest to operate the Trailer Park. HP Home charged C&R with the responsibility of determining and executing a notification plan to the tenants regarding move-out procedures, and the logistics of closing the Trailer Park. The closing of the Trailer Park was set for early March 2011.
On February 10, 2011, C&R notified the Trailer Park's tenants of the pending closure. C&R identified a number of tenants it would assist in moving to another C&R managed Trailer Park, subject to Howard's approval. Appellant was not included in this list. After complaining to some of HP Home's board of directors, Appellant contacted Howard to express her concerns about leaving the Trailer Park and not being selected by C&R for assistance in moving to another C&R managed property. As a result, Howard met with Appellant in front of her trailer at the Trailer Park and explained to her that C&R would assist her in moving out of the Trailer Park. Appellant testified that Mr. Evans offered her $200 for the storage unit but he never *64 paid it. She also testified that she paid the individual who moved her trailer. Appellant also testified that when she moved, her first month's rent at the new location was free but subsequently went up to $510 per month as opposed to her monthly rent of $350 at the Trailer Park. In addition, her utility bill increased about $34 per month.
Appellant claimed that on February 23, 2011, Appellant's utilities were cut off, apparently due to non-payment by the property owner. Appellant subsequently sold her storage building and moved to a different complex.
Procedural Background[1]
On January 12, 2012, Appellant filed suit in Justice of the Peace Court Precinct Four, Place Two in Irving, Texas (the "JP Court") against Howard, in his personal and professional capacity. The suit alleged, inter alia , violations of the Texas Deceptive Trade Practices Act ("DTPA"), violations of the Texas Property Code, and fraud. On June 6, 2012, Howard filed a Motion for Leave to Designate a Responsible Third Party in Justice Court; namely, to designate C&R as the responsible third party. The JP Court granted Howard's motion to designate C&R as a responsible third-party.
On August 6, 2012, Appellant filed an amended petition in the Justice Court, again against Howard in his personal and professional capacity, adding HP Home, with similar, more detailed allegations than the first petition. C&R filed a petition in intervention, which Howard opposed, and on October 11, 2012 the JP Court denied Howard's Motion to Strike the Intervention.
On May 2, 2013, Appellant filed her second amended petition in the Justice Court, adding High Plains Children's Home & Family Services Foundation, Inc. ("HP Home Foundation"), an independent and distinct entity, as an additional defendant, alleging similar claims she previously made. On May 16, 2016, Appellant filed her second amended petition with the same, but more detailed allegations as the May 2, 2013 petition.
On June 5, 2013, after Appellant presented her case before a jury, the JP Court granted a directed verdict in favor of defendants Howard, HP Home, HP Home Foundation, and C&R, not ruling on the jurisdictional pleas Howard and HP Home Foundation previously filed. Appellant appealed the judgment of the Justice Court to the County Court of Law No. 2 of Dallas County (the "County Court").
On August 19, 2013, Howard, HP Home, and HP Home Foundation filed their First Supplemental Plea to the Jurisdiction in the County Court. After a hearing, the County Court granted Howard and HP Home Foundation's pleas to the jurisdiction and, in a separate order, granted the motion to strike the intervention of C&R.
On September 12, 2013, Appellant presented her case against HP Home (the remaining defendant) to a jury and the County Court thereafter granted HP Home's directed verdict. Appellant subsequently filed her motion for new trial and properly perfected her appeal.
DISCUSSION
On appeal, Appellant urges sixteen points of errors by the County Court. They are as follows:
1. Directed Verdict
2. Jurisdictional Bar
3. Motion to Strike the Petition of Intervention?
*65 4. Who was the landlord and/or acting Landlord?
5. Was Appellant Constructively Evicted?
6. Did Appellees violate the Texas Property Code?
7. Did Appellees violate the DTPA?
8. Was Appellant a Consumer, who is covered under the DTPA?
9. Did Appellees perpetrate Fraud Upon the Court?
10. Was the Judge Biased for Appellees?
11. Is High Plains Children's Home and Family Services, Inc. a legitimate Orphanage?
12. Did Appellees hire G & R [sic] Management as a scapegoat?
13. Did Mr. Craig Howard use the 32 children as a front to snare dying individuals estates and create bias in Appellant's Cause?
14. There are first impressions of law, which must be clarified by this Honorable 8th District Court of Appeals Specifically, (but not limited to) when did the Landlord-Tenant Relationship begin between Appellees and Appellant or if anyone inherits rent property: When does the Landlord-Tenant Relationship?
15. Will this Honorable 8th District Court of Appeals sum sponte rule on any other abuses of discretion, errors, and issues that this legal nightmare has created caused by the Court, Appellees, and Appellant's pro se status?
16. No categories of abuse of discretion, errors, and issues waivered by omission herein.
After reviewing the record and the briefs, we find Appellant's complaints may be cast into four categories.[2] First, Appellant's third point of error asserts the County Court erred in striking the plea of intervention by C&R. Second, Appellant complains in her second point of error, the County Court erred in granting the plea to jurisdiction by defendants Howard and HP Home Foundation. Third, she argues in her first point of error, the County Court erred in granting the motion for directed verdict in favor of HP Home which are based on her points of error five and seven. Last, Appellant complains of numerous other, assorted errors by the trial court as outlined in Points of Error Nos. Four; Six; Eight through Sixteen.
Striking the Plea in Intervention
In Appellant's third point, she complains the County Court erred when it granted Howard's motion to strike C&R's plea in intervention, especially after the JP Court allowed C&R to remain in the lawsuit as a party. Specifically, Appellant alleges as the result of Howard's request that the JP court designate C&R as a responsible third-party, Howard was attempting to thrust his liability upon C&R. Therefore, she asserts C&R's motion to intervene should not have been struck by the County Court.[3]
*66 When a party is challenging a trial court's decision to strike a party's intervention under Rule 60 of the Texas Rules of Civil Procedure,[4] we review under the abuse of discretion standard. Guar. Fed. Sav. Bank v. Horseshoe Operating Co. , 793 S.W.2d 652, 657 (Tex. 1990) ; Quiroz v. Gray , 441 S.W.3d 588, 594 (Tex.App.-El Paso 2014, no pet.). "A trial court abuses its discretion if it acts arbitrarily or unreasonably or without reference to any guiding rules or principles." Gray , 441 S.W.3d at 593 (quoting Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985), cert. denied, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986) ). An abuse of discretion is not demonstrated when a trial court decides a matter within its discretion in a different manner than an appellate court. Texas Mut. Ins. Co. v. Olivas , 323 S.W.3d 266, 277 (Tex.App.-El Paso 2010, no pet.) (citing Downer , 701 S.W.2d at 241-42 ).
"Any party may intervene by filing a pleading, subject to being stricken out by the court for sufficient cause on the motion of any party." TEX.R.CIV.P. 60. Once a motion has been filed by a party already part of the litigation, the burden shifts to the intervenor to show a justiciable interest in the litigation. In re Union Carbide Corp. , 273 S.W.3d 152, 155 (Tex. 2008). A party has a right to intervene when the party has a justiciable interest in the lawsuit. Law Offices of Windle Turley, P.C. v. Ghiasinejad , 109 S.W.3d 68, 70 (Tex.App.-Fort Worth 2003, no pet.) ; In re Jobe Concrete Products, Inc. , No. 08-01-00351-CV, 2001 WL 1555656, at *4 (Tex.App.-El Paso Dec. 6, 2001, no pet.) (not designated for publication). Stated differently, a party may intervene when the party's interests will be affected by the litigation. Ghiasinejad , 109 S.W.3d at 70. The justiciable interest is analogous to an interest that is "essential for a party to maintain or defend an action." McCord v. Watts , 777 S.W.2d 809, 811 (Tex.App.-Austin 1989, no writ) ; see also Guar. Fed. Sav. Bank , 793 S.W.2d at 657 (a person has a right to intervene "if the intervenor could have brought the same action, or any part thereof, in his own name, or, if the action had been brought against him, he would be able to defeat recovery, or some part thereof"). The intervenor's interest may be legal or equitable, but it cannot be merely contingent or remote. Guar. Fed. Sav. Bank , 793 S.W.2d at 657.
If a party cannot show a justiciable interest in the lawsuit, a trial court should strike the plea in intervention. Ghiasinejad , 109 S.W.3d at 70. Trial courts review the pleadings to determine if an intervenor has a justiciable interest. Segovia-Slape v. Paxson , 893 S.W.2d 694, 696 (Tex.App.-El Paso 1995, no writ). Even so, "[t]he ultimate determination of whether an intervention should be struck, even where a justiciable interest is shown, has long been held to be vested in the sound discretion of the trial court." [Citations omitted]. Texas Mut. Ins. Co. , 323 S.W.3d at 277. A trial court abuses its discretion by striking a plea in intervention if the intervenor (1) could have brought the same action, or any part of it, in its own name or could have defeated recovery, or some part of it, if the action had been brought against it, (2) the intervention would not complicate the case by excessively multiplying the issues, and (3) the intervention is almost essential to effectively protect the intervenor's interest. Guar. Fed. Sav. Bank , 793 S.W.2d at 657.
*67 The relevant pleadings were filed by C&R and Howard. In their response opposing the motion to strike their intervention, C&R argued that having been designated as responsible third parties, they now had a justiciable interest in the litigation. This was the same argument posited by C&R at the August 22, 2013 hearing and the argument Appellant raises in her appeal.
The Texas Civil Practice and Remedies Code provides that granting a motion to designate a third party does not, by itself, impose liability on that party and the designation cannot be used in any other legal proceeding to impose liability. TEX.CIV.PRAC. & REM.CODE ANN. § 33.004(i) (West 2015)("The filing or granting of a motion for leave to designate a person as a responsible third party or a finding of fault against the person: (1) does not by itself impose liability on the person; and (2) may not be used in any other proceeding, on the basis of res judicata, collateral estoppel, or any other legal theory, to impose liability on the person."). The litigation and potential liability imposed on the then named defendants (Howard, HP Home, and HP Home Foundation) would have no consequence on C&R, even with any apportionment of responsibility as a designated responsible third party. Had Appellant prevailed in her suit and any responsibility been placed on C&R as a responsible third party, absent joinder, a finding of fault would not have imposed any actual liability on C&R. See In re El Apple, Inc. , 362 S.W.3d 154, 158 (Tex.App.-El Paso 2012, orig. proceeding) ("Neither granting of a motion for leave to designate a responsible third party, nor a finding of fault against the designated party imposes any liability upon that person. ... Similarly neither may be used in any other proceeding, on the basis of res judicata, collateral estoppel, or any other legal theory to impose liability upon that person.")(citing TEX.CIV.PRAC. & REM.CODE ANN. § 33.004(i)(1) & (2) ). The problem with C&R's argument in the trial court and Appellant's argument on appeal is that both fail to recognize an alternative method of making C&R a party to the suit; adding C&R as a defendant to the suit. We find C&R did not have a justiciable interest in the lawsuit as a named responsible third party and that the County Court correctly struck the plea in intervention.
We overrule Appellant's third issue and others as they pertain to C&R.
Pleas to the Jurisdiction
Appellant's second point of error asserts the trial court erred when it granted defendants Howard and High Plains Foundations' motion to dismiss for want of jurisdiction. Specifically, Appellant argues that the parties (Howard, HP Home, and HP Home Foundation) were "inextricable intertwined" [sic] and, secondly, that there was privity between the parties.
The existence of the trial court's jurisdiction is a question of law. Watkins v. Debusk , 286 S.W.3d 58, 60 (Tex.App.-El Paso 2009, no pet.) (citing State v. Holland, 221 S.W.3d 639, 642 (Tex. 2007) and Tex. Dept. of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004) ). We therefore review a trial court's ruling on a plea to the jurisdiction de novo. Id. In performing our review of a trial court's ruling on a plea to the jurisdiction, we construe the pleadings liberally in favor of conferring jurisdiction. Tex. Dept. of Transp. v. Ramirez, 74 S.W.3d 864, 867 (Tex. 2002). A defendant may challenge either the plaintiff's pleadings or the existence of jurisdictional facts. Tex. Dept. of Parks & Wildlife , 133 S.W.3d at 226. If the jurisdictional facts are challenged, we consider the relevant evidence and pleadings *68 that are necessary to resolve the jurisdictional issue raised. Holland , 221 S.W.3d at 643 ; Tex. Dept. of Parks & Wildlife , 133 S.W.3d at 227. A plea should not be granted if a fact issue is presented as to the court's jurisdiction, but if the relevant undisputed evidence negates jurisdiction, then the plea to the jurisdiction must be granted. Tex. Dept. of Parks & Wildlife , 133 S.W.3d at 227-28.
At the August 22, 2013 hearing, and again on appeal, Appellant argued that she believed the parties were intertwined, that privity existed between the parties, and therefore the web of landlords expanded to include both Howard and HP Home Foundation. In response, and on appeal, the Appellees maintain that a landlord-tenant relationship was never created with Howard or HP Home Foundation and therefore should not be expanded beyond HP Home.
When Mr. May died, he left the Trailer Park to HP Home, who became the new property owner. C&R managed the Trailer Park and Howard, as executive director of HP Home, was presumably employed by HP Home. HP Home Foundation, however, was a separate and distinct entity. A "landlord" means "the owner, lessor, or sublessor of a dwelling, but does not include a manager or agent of the landlord unless the manager or agent purports to be the owner, lessor, or sublessor in an oral or written lease. See TEX.PROP.CODE ANN. § 92.001(2) (West 2014).[5] HP Home Foundation was not an owner, manager, lessor, or sublessor of HP Home but was a separate and distinct entity. We conclude that it was not error to grant the plea to the jurisdiction for HP Home Foundation. As to Howard, he was also not an owner, lessor, or sublessor of HP Home. In addition, Howard never purported to be an owner, lessor, or sublessor of the property. C&R managed the Trailer Park on HP Home's behalf. We find HP Home Foundation and Howard were not proper parties to the lawsuit and that the trial court properly dismissed the two for want of jurisdiction. Issue Two is overruled.
Directed Verdict
Appellant, in her first point of error, argues the trial court committed error when the County Court granted HP Home's motion for directed verdict on Appellant's different theories of liability. Appellant included several claims in her live pleading involving the Property Code, however, at trial, presented only two claims: the constructive eviction claim and the DTPA claim.
A directed verdict is akin to a no-evidence motion for summary judgement, except that if it is brought during *69 trial, and we apply the legal sufficiency standard of review. King Ranch, Inc. v. Chapman , 118 S.W.3d 742, 750-51 (Tex. 2003) ; Sage v. Howard , 465 S.W.3d 398, 402 (Tex.App.-El Paso 2015, no pet.). "Under this standard, we review the evidence in the light most favorable to the non-movant, credit evidence favorable to that party if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." Id. "A trial court should grant a no evidence motion when: (1) there is a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of the vital fact." Sage , 465 S.W.3d at 402 (citing King Ranch, 118 S.W.3d at 751 ).
More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." [Internal quotations omitted]. Id. at 403. There is not a scintilla of evidence when the evidence is so weak as to do no more than create a mere surmise or suspicion of material fact. Wade Oil & Gas, Inc. v. Telesis Operating Co., Inc., 417 S.W.3d 531, 540 (Tex.App.-El Paso 2013, no pet.) ; Ianni v. Loram Maintenance of Way, Inc., 16 S.W.3d 508, 513 (Tex.App.-El Paso 2000, pet. denied). Evidence that fails to constitute more than a mere scintilla is, in legal effect, no evidence at all. Lozano v. Lozano, 52 S.W.3d 141, 148 (Tex. 2001) ; Wade Oil & Gas, 417 S.W.3d at 540.
1. Constructive Eviction Claim
Appellant's contention at trial, and on appeal, in her fifth point of error, was that she was constructively evicted when her utilities were shut off as a result of non-payment.
"A constructive eviction occurs when the tenant leaves the leased premises due to conduct by the landlord which materially interferes with the tenant's beneficial use of the premises." Fidelity Mut. Life Ins. Co. v. Robert P. Kaminsky, M.D., P.A., 768 S.W.2d 818, 819 (Tex.App.-Houston [14th Dist.] 1989, no writ). "Constructive eviction essentially terminates mutuality of obligation as to the lease terms, because the fundamental reason for the lease's existence has been destroyed by the landlord's conduct." Downtown Realty, Inc. v. 509 Tremont Bldg., Inc., 748 S.W.2d 309, 313 (Tex.App.-Houston [14th Dist.] 1988, no writ). The general requirements for constructive eviction are: (1) an intention on the part of the landlord that the tenant shall no longer use or enjoy the premises; (2) a material act or omission by the landlord that substantially interferes with the use and enjoyment of the premises; (3) the act must permanently deprive the tenant of the use and enjoyment of the premises; and (4) the tenant must abandon the premises within a reasonable time after the commission of the act. Charalambous v. Jean Lafitte Corp., 652 S.W.2d 521, 526 (Tex.App.-El Paso 1983, writ ref'd n.r.e.).
The first element requires that the landlord act with the intent to deprive the tenant from the use or enjoyment of the property, although the landlord's intent can be inferred from the circumstances. Id. ; Coleman v. Rotana, Inc. , 778 S.W.2d 867, 872 (Tex.App-Dallas 1989, writ denied). The second element requires that the landlord commit a material act or omission that substantially interferes with the use and enjoyment of the premises. Id. Appellant has not cited a statute, rule, or case law in support of the proposition that failing to pay (i.e. an omission) a utility bill, *70 with the subsequent cessation of utilities, in the residential context results in an intentional omission and substantial interference with the use and enjoyment of the premises.
Appellant does however cite Charalambous v. Jean Lafitte Corp. , which we find helpful here. In Jean , the tenants had a commercial lease whereby they ran a restaurant. Id. at 523. The tenants alleged that when the landlord's agent became disturbed by the noise made by a musical group performing at the restaurant, the agent cut off the restaurant's utilities without warning, resulting in substantial food spoilage and loss of restaurant business. Id. The tenants further alleged that the landlord and the agent subsequently changed the locks on the restaurant floors eleven days later. Id. After outlining the elements for a constructive eviction, this Court found that the elements were satisfied "by the undisputed testimony regarding defendants changing the locks and effectively preventing the [tenants] from carrying on their business after [the lockout date]. Jean , 652 S.W.2d at 526. Importantly, this Court did not rely on the date the utilities were cut.
Under different, yet also helpful facts, in Downtown Realty, Inc. v. 509 Tremont Bldg., Inc. , our sister court found that a landlord's failure (i.e. omission) to repair the heating and air conditioning sufficiently material to constitute constructive eviction in a commercial context where oral and written notifications began months before the tenants abandoned the premises. 748 S.W.2d at 310-11, 312.
While Jean and Downtown Realty both involved commercial leases, we nevertheless find both cases instructive here in the residential lease context. Appellant did not produce any evidence at trial as to why HP Home failed (i.e. omitted) to pay the utilities. Nor did Appellant product any evidence as to when or whether they were restored. The record is also void as to whether only Appellant's utilities were cut as a result of non-payment, or if the entire Trailer Park's utilities were affected, or only certain tenant's utilities were affected. Other than her own testimony as to the utilities cut as the result of non-payment, Howard was the only other witness to testify at trial on the subject, explaining he was unaware of why the utilities were unpaid. Appellant also did not present evidence HP Home, through Howard or anyone else, acted with intent to deprive Appellant with the use and enjoyment of the property by failing to pay the utilities. Because Appellant did not produce any evidence indicating anyone's intent in failing to pay the utilities, failed to show if either HP home or Howard were aware of the failure, or if the utilities were ever restored (or if there was a restoration attempt), and there is no evidence to indicate which tenants' utilities were affected, we find that the County Court did not commit error in granting the directed verdict against Appellant on the constructive eviction claim.
2. DTPA Claim
Appellant's seventh point of error alleges Appellees violated the DTPA. The elements of a DTPA claim are that: (1) the plaintiff be a consumer; (2) the defendant engaged in false, misleading, or deceptive acts; and (3) the acts were a producing cause of the plaintiffs damages. TEX.BUS. & COM.CODE ANN. § 17.50(a)(1) (West 2011); Doe v. Boys Clubs of Greater Dallas, Inc. , 907 S.W.2d 472, 478 (Tex. 1995). In an action for a violation of the DTPA, a plaintiff can recover economic damages plus mental-anguish damages. TEX.BUS & COM.CODE ANN. § 17.50(b)(1) ; Tony Gullo Motors I, L.P. v. Chapa , 212 S.W.3d 299, 304 (Tex. 2006).
*71 Damages are engrained within the statute and are essential for a DTPA claim. Cruz v. Andrews Restoration, Inc. , 364 S.W.3d 817, 823 (Tex. 2012) ("The statute's clear language provides a cause of action only to consumers who have sustained damages ..."). Thus, a plaintiff can recover for a violation of the DTPA only if the plaintiff proves actual damages. Id. ; Holliday v. Weaver , 410 S.W.3d 439, 443 (Tex.App.-Dallas 2013, pet. denied) ("economic damages" are synonymous with "actual damages").
"A property owner may testify to the value of [her] property." Nat. Gas Pipeline Co. of Am. v. Justiss , 397 S.W.3d 150, 155 (Tex. 2012). While opinion testimony concerning damage to property is "subject to the same requirements as any other opinion evidence," there is one exception: "the owner of the property can testify to its market value, even if he could not qualify to testify about the value of like property belonging to someone else." Id. (quoting Porras v. Craig , 675 S.W.2d 503, 504 (Tex. 1984) ). While the "Property Owner Rule established that an owner is qualified to testify to property value," the property owner's testimony must "meet the same requirements as any other opinion evidence." [Internal quotations omitted]. Justiss , 397 S.W.3d at 156. Thus, the Texas Supreme Court held that since "property owner testimony is the functional equivalent of expert testimony, it must be judged by the same standards." Id. at 159. The Court explained that "as with expert testimony, property valuations may not be based solely on a property owners ipse dixit. An owner may not simply echo the phrase 'market value' and state a number to substantiate his [claim]: he must provide the factual basis on which his opinion rests." Id. The Court noted that this was not an onerous burden, particularly in light of the recourses available today e.g. price paid, nearby sales, tax valuations, appraisals, online recourses, etc. Id. This substantiation standard may be challenged at trial but even if unchallenged, the testimony must support a verdict, as conclusory or speculative statements do not. Id. (citing Kestenbaum v. Falstaff Brewing Corp. , 514 F.2d 690, 698-99 (5th Cir. 1975)) (finding that a property owner's estimation testimony based solely on speculative factors was of such minimal probative force to warrant a judge's refusal even to submit the issue to the jury); Coastal Transp. Co., Inc. v. Crown Cent. Petroleum Corp. , 136 S.W.3d 227, 233 (Tex. 2004) (holding that "bare conclusions ... even if objected to ... cannot constitute probative evidence").
In developing this rule, the Texas Supreme Court cited as support Lefton v. Griffith , 136 S.W.3d 271 (Tex.App.-San Antonio 2004, no pet.), a case similar to the present one. In Lefton , the tenant alleged several causes of action against the landlords, including a DTPA claim. Id. at 273-74. The tenant failed to pay rent and the landlords subsequently changed the locks. The tenant claimed that she was forced to sell her furniture inventory and her home at an extreme loss in order to pay her creditors. The trial court awarded the tenant economic damages, mental anguish damages, treble damage mental anguish damages, and attorney's fees in a default judgment since the landlords had failed to file a response. On appeal, the landlords challenged the legal and factual sufficiency evidence to support the award of damages.
The court explained that the tenant failed to substantiate how she arrived at the conclusion she had lost $60,000 when she was forced to sell her home and $290,000 when forced to sell her inventory. Lefton , 136 S.W.3d at 276-277. The court noted on appeal, there was "no way of knowing what she based her conclusion *72 on" and that the tenant's "estimate could be purely speculative." Id. at 277. The court held that the evidence of loss from the sale of the home and inventory were legally insufficient to support an award of damages. Id.
In the instant case, Appellant testified, without supporting evidence or factual basis, that her trailer and storage building were "approximately worth $5,000" and "like worth $1,000," respectively, when she sold them. In addition, Appellant complained about the cost incurred as a result of the move, the increased rent (from $350/month to $550/month, after a month's free rent), increased utilities, and the loss of food in the refrigerator caused by the lack of power when the utilities were not paid.
As it pertains to the value of the trailer, Appellant did not provide more than her "approximation" as to its value. In addition, she never alleged that she in fact was forced to sell the trailer, just that she was forced to move and that she paid someone to move her trailer. As it pertains to the storage unit's value, she provided no more than a speculative statement not providing any factual basis on which her opinions rested. As to the increased rent and utilities, Appellant did not provide how her rent would have been any different had she stayed at the Trailer Park for the full 45 days, and did not provide any evidence as to what was in the refrigerator when the power went out to indicate any loss.
A valuation must be substantiated; naked assertion is not enough. Justiss , 397 S.W.3d at 159. Appellant's testimony "provides only [her] guess" as to her losses. Id. at 161. But see Daftary v. Prestonwood Mkt. Square, Ltd. , 404 S.W.3d 807, 814 (Tex.App.-Dallas 2013, pet. denied) (where the jury's award of damages was based on competent and factually supported evidence of relocation costs, costs to finish out a new lease, and rent during the period the plaintiff was constructively evicted). Thus, we find that the County Court did not commit error in granting the directed verdict against Appellant on the DTPA claim, even if she properly proved the DTPA elements, since Appellant's alleged damages were not substantiated and did not rise above a scintilla of evidence. Appellant's first, fifth, and seventh points of error are overruled.
Appellant's Other Issues
Appellant alleges a series of other issues in point of error four, six, eight through sixteen. We fail to find any merit either because they have not been preserved, were inadequately presented, or we find them inapplicable.
Appellant alleges statutory violations in addition to the DTPA claim. Specifically, in point of error six, Appellant claims the violations of Sections 92.008, 92.301, and 94.001 of the Texas Property Code. But each of these is inapplicable. Section 92.008 applies to "the interruption of utility service paid for directly to the utility company by a tenant" but Appellant never alleged she directly paid for her utilities. Section 92.301 provides liability for utility cutoff where a lease provides for utilities. Both parties agree there was no lease. A claim for violation of Section 94.001, a section that Appellant relies on heavily, similarly requires a "written lease." Appellant's point of error six is overruled.
Appellant, in point of error ten, claims that the trial court exhibited "bias." Specifically, Appellant claims that the trial court was biased because it did not take judicial notice when Appellant requested the defendants not be referred to as an orphanage. We find no merit in this argument. Last, Appellant argues that the trial court erred when it denied her motion for *73 new trial, but fails to point to any error or how the trial court abused its discretion. We find this argument was not adequately presented.
Appellant failed to adequately present a clear, concise, and applicable argument with appropriate and applicable authority with citations in each of the remaining issues. We therefore find briefing waiver in each of the remaining issues. TEX.R.APP.P. 38.1 ; See $ 4,310 In U.S. Currency v. State of Texas , 133 S.W.3d 828, 829 (Tex.App.-Dallas 2004, no pet.) (an appellate court is not required to make arguments for pro se litigants or address the merits of issues inadequately briefed).
CONCLUSION
Having overruled Appellant's points of error, we affirm the judgment of the trial court.
Hughes, J., Not Participating

The filings here only include those relevant to this appeal.

We note that Appellant's brief cites exhibits not admitted at trial. See Warriner v. Warriner , 394 S.W.3d 240, 254 (Tex.App.-El Paso 2012, no pet.).

At the hearing, when the court asked why C&R sought to intervene. C&R responded, "Because that [sic] they are naming my clients and trying to put responsibility on them." The court also asked C&R what interest would be protected by their participation. C&R responded that their reputation was at stake since C&R was a party to some other litigation in probate court. C&R acknowledged that no findings would be entered against them. In addition, C&R's counsel agreed with the court that never, to anyone's memory at the hearing, had a third party intervened as a result of a responsible third-party designation.

Under Rule 60, "[a]ny party may intervene by filing a pleading, subject to being stricken ... for sufficient cause[.]" Tex.R.Civ.P. 60.

We note that while Appellant relies on Chapter 94 of the Texas Property Code which governs tenancies in a manufactured home community, such as the Trailer Park. See Tex.Prop.Code Ann. § 94.001 (West 2014) ; Office of the Tex.Att'y Gen., Op. GA-0606, at *3 (2008)("[C]hapter 94 of the Real Property Code recognizes specific circumstances that establish a landlord-tenant relationship between a property owner and an RV owner."). The Chapter states that landlord means "the owner or manager of a manufactured home community and includes an employee or agent of the landlord." Tex.Prop.Code Ann. § 94.001(1) (West 2014). The Chapter goes on to state that a "tenant" is a person who is: (1) authorized by a lease agreement to occupy a lot to the exclusion of others in a manufactured home community; and (2) obligated under the lease agreement to pay rent, fees, and other charges. Tex.Prop.Code Ann. § 94.001(11). The Code defines a "lease agreement" as "a written agreement between a landlord and a tenant that establishes the terms, conditions, and other provisions for placing a manufactured home on the premises of a manufactured home community." Tex.Prop.Code Ann. § 94.001(2). No written agreement was ever introduced at trial, nor does Appellant claim one exists.