

# COURT OF APPEALS
# EIGHTH DISTRICT OF TEXAS
# EL PASO, TEXAS

---

No. 08-24-00402-CV

---

Victoriano Mendoza, Appellant

v.

Aaron A. Felix Sanchez, Appellee

---

On Appeal from the 384th District Court
El Paso County, Texas
Trial Court No. 2023-DCV0482

---

# OPINION

This appeal arises from a plea in intervention filed by Appellee Aaron A. Felix Sanchez following a series of transactions gone wrong. Defendant Alex Montoya sold a BMW vehicle to Felix, but Appellant Victoriano Mendoza later took possession of it and placed a lien on it after claiming he was defrauded by Montoya in a separate, prior transaction. The trial court found that

Mendoza willfully and intentionally interfered with the existing contract between Felix and Montoya. On appeal, Mendoza challenges that determination.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

On October 14, 2022, Montoya and Mendoza contracted for the purchase of real property (the land). Montoya claimed ownership of the land, and Mendoza paid Montoya $120,000 for it—$65,000 in cash and $55,000 in the value of a BMW vehicle. On December 15, 2022, Montoya and Mendoza executed a general warranty deed memorializing their agreement. On January 18, 2023, Mendoza delivered the cash and turned the BMW over to Montoya. Mendoza left the title to the vehicle in the glove compartment of the BMW and turned the BMW over to Montoya as part of the purchase price for the land.

Montoya later listed the BMW for sale on Facebook. After Felix expressed interest, Mendoza sent him a photo of the title. The next day, January 19, Montoya and Mendoza went to Felix's place of business. While there, Mendoza purchased dry van trailers from Felix. Felix and Mendoza executed a bill of sale, which Mendoza signed. That same day, Montoya sold the BMW to Felix.

Montoya sold the BMW to Felix for $36,200. Felix paid $16,000 in cash and $20,200 in the value of an off-road vehicle. Felix's bank statements, showing withdrawals totaling $16,000 on January 19, 2023, were admitted at trial. On that date, Montoya and Felix executed a bill of sale for the BMW dated January 19, 2023, which was signed by both Montoya and Felix, and admitted at trial. Montoya gave Felix the BMW's title and turned the vehicle over to him.[2]

---

[1] Before the incident giving rise to this suit, Montoya, Mendoza, and Felix knew each other from prior transactions, though the record is unclear as to the nature of their relationships.

[2] At trial, Mendoza acknowledged that he was not in possession of the title and that Felix had it.

The first page of the title bore the signature of Mendoza as owner, and the second page contained Mendoza's signature in the "Assignment of Title" section. Felix confirmed that Mendoza's signature on the BMW title matched Mendoza signature on the bill of sale for the trailers. The next day, January 20, Felix called Mendoza to inform him that he had purchased the BMW from Montoya.

About a week later, Mendoza discovered that Montoya did not have clear title to the land. Mendoza demanded that Montoya return the cash and the BMW, but Montoya refused. Shortly after, on February 2, Mendoza had the BMW towed from Felix's residence. When Felix attempted to report the BMW stolen, a 911 operator informed him that the BMW had been repossessed by Sky Hawk Towing Company. Felix later learned that the towing company and Mendoza shared the same address.

On February 14, the El Paso Police Department took Felix's stolen vehicle report. Two days later, on February 16, Mendoza—without Felix's knowledge—sued Montoya for breach of contract, fraud, and unjust enrichment. That same day, Mendoza, through his attorney, placed a lien on the BMW. On February 24, the BMW was recovered by EPPD and impounded at the El Paso Municipal Vehicle Storage facility pending a right-of-possession hearing.

On November 2, 2023, a bench trial on the right of possession was held in El Paso Municipal Court No. 5.[3] The municipal court determined that Felix was entitled to possession of the BMW and ordered that the vehicle be released to him. Felix then attempted to title the BMW in his name but was unable to do so. He then learned, for the first time, of the lien Mendoza had placed on the BMW. Later that December, Felix also learned that Mendoza had sued Montoya.

---

[3] Styled Cause No. 23-053078.

On March 21, 2024, Felix filed his "Plea in Intervention, Tortious Interference with Contract, Trespass to Chattels and Motion to Release Lien." On August 28, 2024, Felix's claims against Mendoza were tried in a bench trial before the 384th El Paso County District Court. Felix and Mendoza both testified. On October 23, 2024, the trial court signed its "Judgment Granting Intervenor's Plea in Intervention, Tortious Interference with Contract, Trespass to Chattels and Order to Release Lien." The trial court ordered title of the BMW in Felix's name, ordered release of any lien or encumbrance on the BMW, and awarded Felix costs and damages.[4] The trial court found, in relevant part:

- "[T]here was an existing contract to purchase the . . . BMW . . . between [Felix] and [Montoya]."

- "[Mendoza] willfully and intentionally interfered with the existing contract by having said BMW towed from [Felix's] residence."

- "[Mendoza], without [Felix's] knowledge or consent, placed a lien against the title to the BMW with the Texas Department of Transportation and that [Mendoza] failed to remove said lien after the El Paso Municipal Court ordered that possession [be] entered in favor of [Felix]."

- "[Mendoza] by his actions did cloud [Felix's] title to the BMW and thereby proximately caused [Felix] injuries and damages."

Mendoza appeals the trial court's finding that he willfully and intentionally interfered with an existing contract.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

The purpose of a plea in intervention is to join a lawsuit that is already in progress and once a party intervenes, he becomes a party to the suit for all purposes. *Kenneth D. Eichner, P.C. v. Dominguez*, 623 S.W.3d 358, 362 (Tex. 2021). A trial court has a number of options in exercising discretion over pleas in intervention, including trying the intervention claims. *Saldana v. Saldana*,

---

[4] Mendoza does not challenge the trial court's award of damages or costs.

4

791 S.W.2d 316, 320 (Tex. App.—Corpus Christi–Edinburg 1990, no pet.). We review a trial court's ruling on intervention for abuse of discretion. *Farmers Grp. V. Geter*, 620 S.W.3d 702, 713 (Tex. 2021); *Saldana*, 791 S.W.2d at 320. A trial court abuses its discretion if it acts arbitrarily or unreasonably, or without reference to any guiding rules of principles. *Williamson v. Howard*, 554 S.W.3d 59, 66 (Tex. App.—El Paso 2018, no pet.); *Saldana*, 791 S.W.2d at 320. "An abuse of discretion is not demonstrated when a trial court decides a matter within its discretion in a different manner than an appellate court." *Williamson*, 554 S.W.3d at 66.

Findings of fact in a bench trial carry the same force and dignity as a jury's verdict and are subject to review for both legal and factual sufficiency of the evidence. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). A reviewing court considers the trial court's conclusions of law de novo. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). "Review of [any] unchallenged findings is restricted to whether the evidence is legally sufficient to support them." *Anadarko Petroleum Corp. v. TRO-X, L.P.*, 511 S.W.3d 778, 784 (Tex. App.—El Paso 2016), *aff'd*, 548 S.W.3d 458 (Tex. 2018) (citations omitted).

In conducting a legal sufficiency review, we view the evidence in the light favorable to the verdict, crediting favorable evidence if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). We are also mindful that the factfinder is the sole judge of the credibility of the witnesses and the weight to give their testimony. *Id*. at 819. So long as the evidence falls within this zone of reasonable disagreement, we may not substitute our judgment for that of the factfinder. *Id*. at 822. The ultimate test in a legal sufficiency review is whether the evidence would enable reasonable and fair-minded people to reach the verdict under review. Id. "'Any evidence of

probative force supporting a finding requires us to uphold' the trial court's ruling." *Anadarko*, 511 S.W.3d at 785 (citing *ACS Invs., Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997)).

A plaintiff asserting a claim of tortious interference with an existing contract must prove: (1) the existence of a contract subject to interference; (2) willful and intentional interference; (3) the willful and intentional interference caused damage; and (4) actual damage or loss occurred. *Inwood Nat'l Bank v. Fagin*, 706 S.W.3d 342, 347 (Tex. 2025).

## III. DISCUSSION

In his sole issue on appeal, Mendoza contends that the trial court "erred in finding that [he] willfully and intentionl[ly] interfered with an existing contract."[5] The crux of Mendoza's argument, both at trial and on appeal, is that Felix is suing the wrong person: "Felix is suing a person, [Mendoza], who did not sell Felix the car, but Felix is not suing the person (Montoya) that sold him the car."

Felix pleaded that Mendoza "willfully and intentionally interfered with the existing contract by having the BMW towed from [his] residence; placing a lien against title to the BMW with the Texas Department of Transportation, and failing to remove said lien even after the El Paso Municipal Court order was entered." Although Mendoza concedes that "a cause of action for interference may be based on an unenforceable contract," he maintains that there was "no

---

[5] Mendoza explicitly challenges the second element of a tortious interference with an existing contract claim in the "Issues Presented" section of his brief. He also presents, in the "Summary of the Argument" section of his brief, the issue as "1. Whether the trial Court erred in granting Intervenor's Plea in Intervention, Tortious Interference with Contact." Although Mendoza does not contest the second and fourth elements relating to injury in his brief, we address all elements of the tortious interference with an existing contract out of an abundance of caution and in the interest of judicial economy. However, we do not address whether the trial court erred in granting Felix's intervention in the suit. Felix offers no argument or authority on this additional point and, to the extent he challenges it, has waived the complaint. *See* Tex. R. App. P. 38.1 (providing briefing requirements).

enforceable contract between Felix and Montoya that would subject Mendoza to a cla[i]m of tortious interference."[6]

Mendoza offers only a list of reasons to support his argument that he did not willfully and intentionally interfere with the contract between Felix and Montoya, including: that he was unaware of the contract between Felix and Montoya, even though he testified at trial that on February 20, 2023, he learned that Felix bought the BMW from Montoya because Felix called him to tell him; that Mendoza was not present when Felix and Montoya contracted for the BMW; that the bill of sale executed between Montoya and Felix for the BMW does not contain Mendoza's name; that the signature on the BMW title is not Mendoza's and he never signed it; that even though the signature on the BMW "looked like Mendoz[a]'s signature, it's not Mendoza's signature;" that Mendoza did not give Montoya permission to sell the BMW to Felix; that Mendoza was not a party to the contract between Felix and Montoya; that Felix did not pay Mendoza for the BMW; and that Mendoza was the only owner of the BMW. According to Mendoza, these assertions show that "Felix was aware that he was buying a vehicle that did not belong to Montoya. Felix should not be compensated for his illegal gains." The rationale Mendoza advances does not support his challenge to the trial court's determination that he willfully and intentionally interfered with an existing contract.

---

[6] Mendoza alternatively argues that "when the contract is illegal, interference with its performance is not actionable." A contract is illegal if (1) the contract or its performance will violate a constitution, statute, or ordinance, (2) the contract is contrary to public policy, or (3) the contract is an agreement to use the subject matter for an unlawful purpose. *GNG Gas Sys. V. Dean*, 921 S.W.2d 421, 427 (Tex. App.—Amarillo 1996, writ denied). Although Mendoza lodges this argument, he provides no analysis or relevant authority and has therefore waived it. *See* Tex. R. App. P. 38.1 (providing briefing requirements).

**A. The contract between Felix and Montoya existed, was not void, and was subject to interference.**

Though Mendoza argues that the agreement between Felix and Montoya is unenforceable, that argument has no bearing on Felix's claim for tortious interference with an existing contract. It is well established that a contract may be the subject of interference even if it is unenforceable between the contracting parties. *Juliette Fowler Homes, Inc. v. Welch Assocs.*, 793 S.W.2d 660, 664 (Tex. 1990), *superseded on other grounds by statute* ("mere unenforceability of a contract is not a defense to an action for tortious interference with its performance"). Although a contract need not be enforceable to support a claim for tortious interference, it must not be void. *See id.* ("[E]ven an unenforceable contract may serve as the basis for a tortious interference claim if the contract is not void."). And as a threshold matter, because a defendant cannot tortiously interfere with its own contract, the defendant must be a stranger to the contract to tortiously interfere with it. *Community Health Sys. Prof'l Servs. v. Hansen*, 525 S.W.3d 671, 690 (Tex. 2017). Mendoza confirms in his brief, "Mendoza was not in the transaction of Felix with Alex Montoya." Accordingly, as Mendoza maintains, and as the record reflects, Mendoza was not a party to the contract between Felix and Montoya. It therefore follows that the contract was subject to interference by Mendoza.

As to whether the contract is void, the testimony at trial and the evidence established that Felix and Montoya had a complete understanding for the sale of the BMW. Felix and Montoya memorialized their agreement and executed a bill of sale, which was admitted at trial. The bill of sale provided the make, model, year, and VIN number of the BMW; the name and addresses of Felix and Montoya; the purchase price; and was signed by both Felix and Montoya. That same day, Montoya gave Felix the title to the BMW, and Felix took possession of the BMW. Nothing in the record suggests that the contract is void or illegal, and we are not aware of any public policy

8

opposing its performance. Accordingly, we find that a valid contract existed between Felix and Montoya for the sale of the BMW, and that it was subject to interference by Mendoza.

**B. Mendoza willfully and intentionally interfered with Felix and Montoya's contract.**

To prove the second element of his tortious interference with an existing contract claim, Felix was required to show that Mendoza committed a willful and intentional act of interference. *Browning-Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 926 (Tex. 1993). The trial court found that "[Mendoza] willfully and intentionally interfered with the existing contract by having said BMW towed from [Felix's] residence[,]" and "[Mendoza], without [Felix's] knowledge or consent, placed a lien against the title to the BMW with the Texas Department of Transportation and that [Mendoza] failed to remove said lien after the El Paso Municipal Court ordered that possession [be] entered in favor of [Felix]." Mendoza raises specific challenges to these findings.

To establish willful and intentional interference, Felix was required to show that Mendoza had knowledge of the existing contract in question. The record demonstrates that Mendoza had actual knowledge of the contract between Felix and Montoya. To prove such knowledge, Felix needed to show that Mendoza either: (1) had knowledge of the contract and of Felix's interest in it, or (2) had knowledge of facts and circumstances that would lead a reasonable person to believe that there was a contract in which Felix had an interest. *Hart v. Manriquez Holdings, LLC*, 661 S.W.3d 432, 442 (Tex. App.—Houston [14th Dist.] 2023, no pet.).

At trial, Mendoza confirmed that on January 20, 2023—the day after Felix bought the BMW from Montoya and before Mendoza towed the vehicle—Felix called Mendoza to tell him about his purchase of the BMW. Mendoza testified as follows:

Q:      And you would agree with me that you had not had contact with Mr. Felix since he purchased the BMW; is that correct?

9

| | |
|---|---|
| Mendoza: | I made contact the next day. He told me – he called me the next day and told me that he purchased the [BMW.] |

We find that Mendoza had actual knowledge of the contract between Felix and Montoya and, with this knowledge, proceeded to intentionally interfere with it. *See Southwestern Bell Tel. Co. v. John Carlo Tex., Inc.*, 843 S.W.2d 470, 472 (Tex. 1992) (providing that interference with a contract is tortious only if it is intentional).

Mendoza explained at trial that when he discovered Montoya did not have clear title to the land—about a week after Felix bought the BMW from Montoya—Mendoza demanded return of his cash and the BMW. When Montoya refused, Mendoza had the BMW towed and placed a lien on it. Mendoza testified as follows:

| | |
|---|---|
| Q: | [Y]ou found out that Mr. Montoya did not own the property, correct? |
| Mendoza: | Correct. |
| Q: | And you got upset and you wanted your money and the car back, correct? |
| Mendoza: | Correct. |
| Q: | And then you filed a lien on the car, correct? |
| Mendoza: | Correct[.] |

.    .    .

| | |
|---|---|
| Q: | And you were the one that had the vehicle repossessed from my client, correct? |
| Mendoza: | Yes, correct. |
| Q: | And you hired SkyHawk Towing Company, correct? |
| Mendoza: | Yes. |

10

We conclude the trial court's finding that Mendoza willfully and intentionally interfered with an existing contract is supported by both legally factually sufficient evidence

**C. Mendoza's willful and intentional interference caused Felix injury.**

Regarding the third and fourth elements, Felix was required to show that Mendoza's interference caused actual damage or loss, and that such damage or loss occurred. *Fagin*, 706 S.W.3d at 347. The trial court found that "[Mendoza] by his actions did cloud [Felix's] title to the BMW and thereby proximately caused [Felix] injuries and damages." Felix also maintains that as a result of Mendoza's interference, he was deprived of possession of the vehicle and of his right to its unrestricted use.

At trial, Felix testified that after the municipal court determined he was the rightful owner, he attempted to title the BMW in his name but was unable to because of the lien Mendoza had placed. Felix testified as follows:

> Q:        And after [the possession] hearing, did you attempt to title the BMW in your name?
>
> .        .        .
>
> Felix:        Yes, I have issues. They told me it has a lien on the title.
>
> .        .        .
>
> Q:        Okay. And who has a lien on the vehicle?
>
> Felix:        Reedman, I think. Reedman is the name of the lawyers.[7]
>
> Q:        Is that the attorney for Mr. Mendoza[?]
>
> Felix:        That's right.
>
> Q:        Okay. And we've attempted to contact them to release the lien, correct?

---

[7] The record reflects that Lane C. Reedman of Guevara, Baumann, Coldwell & Reedman, L.L.P was Mendoza's attorney.

Felix:      That's correct.

Q:          But we are unsuccessful in doing that, correct?

Felix:      Correct.

Q:          And to date there's still a lien affecting your title, correct?

Felix:      That's correct.

The record also establishes that the BMW was towed from Felix's residence on February 2, 2023, and Felix did not regain possession until after the municipal court ordered on November 2, 2023, that it be released to him. Felix testified that he did not have possession of the BMW and was deprived of its use for nine months. Mendoza does not contest this. Felix also testified that he had planned to sell the BMW and received an offer of $41,000 before Mendoza had it towed. Felix stated that he lost that sale and that, by the time of trial, the BMW's value had "dropped approximately . . . $8,000[.]"

Because the record shows that Felix was unable to title the BMW in his name as a result of the lien Mendoza admitted placing on it—even after Felix was legally declared the rightful owner—was deprived of possession of the BMW for nine months, and lost a potential $40,000 sale due to the interference, we find Mendoza's actions caused actual injury to Felix. *See Mondragon v. Austin*, 954 S.W.2d 191, 196 (Tex. App.—Austin 1997, pet denied.) (recognizing loss of use of a vehicle as injury in tort claim and awarding repair and rental costs as loss-of-use damages); *see also Grant v. Espiritu*, 470 S.W.3d 198, 202 (Tex. App.—El Paso 2015, no pet.) (recognizing loss of possession and use of vehicle as injury after it was taken by wrongdoers to a storage facility); *Hackney v. First State Bank of Honey Grove*, 866 S.W.2d 59, 62 (Tex. App.—Texarkana 1993, no writ (injury proved through evidence that dealership lost its line of credit).

Viewing the evidence in the light most favorable to the trial court's ruling, we hold that the trial court did not act unreasonably or arbitrarily in finding that Mendoza willfully and intentionally interfered with an existing contract, and the trial court's determination is supported by sufficient evidence. Mendoza's sole issue is overruled.

## IV. CONCLUSION

We affirm the trial court's judgment with respect to the claim for tortious interference with an existing contract.

MARIA SALAS MENDOZA, Chief Justice

November 12, 2025

Before Salas Mendoza, C.J., Palafox and Soto, JJ.