**Affirmed and Opinion filed December 20, 2018.**



In The

# Fourteenth Court of Appeals

## NO. 14-16-01005-CV

**ST. ANTHONY'S MINOR EMERGENCY CENTER, L.L.C. D/B/A ST. ANTHONY'S INSTANT CARE CLINIC, Appellant**

**V.**

**ROSS NICHOLSON 2000 SEPARATE PROPERTY TRUST AND ROSS NICHOLSON, Appellees**

**On Appeal from the 55th District Court
Harris County, Texas
Trial Court Cause No. 2015-61264**

## O P I N I O N

In this case involving the lockout of a commercial sublessee, the trial court dismissed all of the sublessee's claims in two summary judgment rulings. Because the lessor conclusively established that no landlord-tenant relationship existed between itself and the sublessee and the landlord was legally justified in conducting the lockout, we affirm.

## Background

Green Bank, N.A., as landlord, entered into a commercial lease of office space with Experience Infusion Centers, LLC (EIC), as tenant. The lease prevented EIC from subletting any of the space without the prior written consent of Green Bank. At the signing of the lease, however, EIC's manager, Jim Rutherford, informed Green Bank's vice president of his business plan to sublease most of the premises to compatible medical companies, specifically mentioning St. Anthony's Instant Care Clinic. Subleases with various companies were executed over the next several months, to which Green Bank did not object. One of the sublessees was St. Anthony's, which also was managed by Jim Rutherford. Its sublease required rent to be paid to EIC.

Green Bank assigned the lease with EIC to the Ross Nicholson 2000 Separate Property Trust (the Trust). EIC defaulted on the lease. St. Anthony's had been paying rent to EIC, but EIC failed to fulfill its own rental obligations. The Trust subsequently locked St. Anthony's out of its offices. St. Anthony's sued the Trust and Ross Nicholson individually (collectively, Nicholson), asserting claims for unlawful lockout, constructive eviction, and tortious interference, asserting vicarious liability as to Ross Nicholson, and seeking damages.

Nicholson filed a motion for summary judgment on the grounds that (1) Nicholson and St. Anthony's did not have a landlord-tenant relationship, and (2) there was no evidence that Nicholson tortiously interfered with the sublease and, even if there were, Nicholson was justified in conducting the lockout because Nicholson had a legal right to interfere with the sublease. St. Anthony's filed a response and special exceptions to the motion, contending that the motion does not clearly state the elements on which Nicholson sought summary judgment on the tortious interference claim or whether Nicholson sought traditional or no evidence

2

summary judgment on that claim. In its response, St. Anthony's asserted two new claims—for negligence and nuisance.[1] The trial court granted the motion and signed an order granting interlocutory judgment on the grounds that "the landlord had no separate contractual obligation to" St. Anthony's and the "action by the landlord was entirely lawful and supported by the facts and landlord's rights under its lease with EIC." In other words, the trial court concluded that (1) Nicholson proved as a matter of law that it lacked a landlord-tenant relationship with St. Anthony's, and (2) Nicholson was justified as a matter of law in conducting the lockout.

Nicholson filed a second motion for summary judgment on the nuisance claim on the basis that Nicholson did not owe a contractual duty to St. Anthony's to refrain from conducting the lockout because they did not share a landlord-tenant relationship. The trial court granted the motion and rendered a final take nothing summary judgment.

### *Analysis*

St. Anthony's contends that the trial court erred in denying the special exceptions and granting summary judgment in favor of Nicholson. We conclude that the trial court did not err in denying the special exceptions and in granting the summary judgment because there is no landlord-tenant relationship between Nicholson and St. Anthony's.

## I.     No Error in Implicit Denial of Special Exceptions

In its fifth issue, St. Anthony's contends the trial court abused its discretion by implicitly overruling the special exceptions. St. Anthony specially excepted to the first motion for summary judgment, asserting as to the tortious interference claim, that (1) it was unclear whether Nicholson was moving for summary judgment

---

[1] On appeal, St. Anthony's refers to these claims as "the nuisance claim."

on traditional or no evidence grounds, and (2) it was unclear which elements of tortious interference were being challenged. Presuming without deciding that the trial court implicitly denied the special exceptions, we conclude it did not abuse its discretion in doing so. In the first summary judgment motion, St. Anthony's expressly invoked traditional summary judgment "pursuant to" rule 166a(c) and did not invoke the no-evidence summary judgment rule 166a(i). *See* Tex. R. Civ. P. 166a(c), (i). Moreover, Nicholson did not move for summary judgment on any elements of tortious interference. Nicholson instead moved for summary judgment on its affirmative defense of justification.[2] We overrule St. Anthony's fifth issue.

## II.     No Error in Granting Summary Judgment

In its remaining issues, St. Anthony's challenges the trial court's summary judgment as to each of St. Anthony's claims. We conclude that the trial court did not err in granting summary judgment on all of St. Anthony's claims.

We review a trial court's grant of summary judgment de novo. *Smith v. Smith*, 541 S.W.3d 251, 259 (Tex. App.—Houston [14th Dist.] 2017, no pet.). We consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if a reasonable factfinder could and disregarding contrary evidence unless a reasonable factfinder could not. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006).

A party filing a traditional motion for summary judgment has the initial burden of showing that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp*

---

[2] Although Nicholson stated in the motion that the evidence did not support St. Anthony's allegations as to the elements of tortious interference, the basis of the motion was to assert the justification defense. The motion stated, "[E]ven if the court were to assume that the plaintiff was able to present some evidence on each of these elements of a tortious interference claim, the court should still grant [the] motion based on the affirmative defense of privilege of justification."

*Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). If the movant does so, the burden shifts to the non-movant to raise a genuine issue of material fact sufficient to defeat summary judgment. *Smith*, 541 S.W.3d at 259. The evidence raises a genuine issue of material fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

When a trial court grants a summary judgment on specific grounds, we generally limit our consideration on appeal to the grounds upon which summary judgment was granted. *See State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex. 1993). Conversely, when the order granting summary judgment does not specify the grounds upon which the trial court relied, we must affirm the summary judgment if any of the independent summary-judgment grounds is meritorious.[3] *State v. Ninety Thousand Two Hundred Thirty–Five Dollars & No Cents in U.S. Currency ($90,235)*, 390 S.W.3d 289, 292 (Tex. 2013).

### Wrongful Lockout, Constructive Eviction, and Nuisance Claims

Nicholson moved for summary judgment on the wrongful lockout and constructive eviction claims on the basis that Nicholson did not have a landlord-tenant relationship with St. Anthony's. The trial court expressly agreed in its interlocutory order granting partial summary judgment. Similarly, Nicholson moved for summary judgment on the nuisance claim on the basis that Nicholson did not owe a negligence duty to St. Anthony's because the parties lacked a landlord-tenant relationship.

---

[3] Here, the trial court articulated grounds for summary judgment in the order granting the first summary judgment motion as to St. Anthony's claims for unlawful lockout, constructive eviction, and tortious interference, so we limit our review to the grounds articulated by the trial court as to these claims. The trial court did not articulate grounds for summary judgment as to the nuisance claim.

The parties agree that to establish an unlawful lockout or constructive eviction, a plaintiff is required to prove a landlord-tenant relationship between the parties.[4] *See* Tex. Prop. Code § 93.001; *Williamson v. Howard*, 554 S.W.3d 59, 69 (Tex. App.—El Paso 2018, no pet.) (listing elements of constructive eviction); *Lazell v. Stone*, 123 S.W.3d 6, 11 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (same); *see also Garcia v. Galvan*, No. 14-11-00338-CV, 2012 WL 1606312, at *3 (Tex. App.—Houston [14th Dist.] May 8, 2012, pet. dism'd w.o.j.) (mem. op.) (listing elements of wrongful eviction). St. Anthony's argues it has done so by virtue of its sublease with EIC. But a landlord that is not a party to a sublease generally has no rights or obligations under the sublease because there is no privity of estate or contract between the landlord and sublessee. *See Tenet Health Sys. Hosps. Dallas, Inc. v. N. Tex. Hosp. Physicians Group, P.A.*, 438 S.W.3d 190, 198 (Tex. App.—Dallas 2014, no pet.); *see also Tawes v. Barnes*, 340 S.W.3d 419, 430-31 (Tex. 2011) (acknowledging when a sublessee is not a signatory to a lease agreement, there is no privity of contract between the sublessee and lessor). Any such rights or obligations must be determined from the language of the lease. *See, e.g., Two Briarlake Plaza LP v. Samsung Eng'g Am., Inc.*, No. 01-15-01041-CV, 2016 WL 6462403, at *3, 8 (Tex. App.—Houston [1st Dist.] Nov. 1, 2016, no pet.) (mem. op.) (holding that plain language of lease allowed lessee to sublet parking spaces in connection with

---

[4] The general requirements for constructive eviction are (1) an intention on the part of the landlord that the tenant shall no longer use or enjoy the premises; (2) a material act or omission by the landlord that substantially interferes with the use and enjoyment of the premises; (3) the act must permanently deprive the tenant of the use and enjoyment of the premises; and (4) the tenant must abandon the premises within a reasonable time after the commission of the act. *Williamson v. Howard*, 554 S.W.3d 59, 69 (Tex. App.—El Paso 2018, no pet.). The applicable case law does not recognize a claim for "unlawful lockout," but there is a claim for "wrongful eviction," which mirrors St. Anthony's "unlawful lockout" claim. The elements for wrongful eviction include (1) the existence of an unexpired lease; (2) the tenant's occupancy of the premises; (3) the landlord's eviction of the tenant; and (4) damages suffered by the tenant attributable to the eviction. *Garcia v. Galvan*, No. 14-11-00338-CV, 2012 WL 1606312, at *3 (Tex. App.—Houston [14th Dist.] May 8, 2012, pet. dism'd w.o.j.) (mem. op.).

office sublease).

As discussed, under the lease, EIC was prohibited from subletting any of the space without the prior written consent of Green Bank and thereafter the Trust as Green Bank's successor. It is undisputed that no such written consent was obtained. Accordingly, there is no landlord-tenant relationship between Nicholson and St. Anthony's.[5]

St. Anthony's argues that it has a landlord-tenant relationship with Nicholson under chapter 92 of the Property Code, which St. Anthony's concedes applies only to residential tenancies. *See* Tex. Prop. Code § 92.002 ("This chapter applies only to the relationship between landlords and tenants of residential rental property."). Regardless, St. Anthony's urges us to apply the definitions for "landlord" and "tenant" in chapter 92 to commercial tenancies under chapter 93, relying on *Levine v. Smith*, 625 S.W.2d 777 (Tex. App.—Fort Worth 1981, writ ref'd n.r.e.).[6] But that

---

[5] St. Anthony's argues that Green Bank "acquiesced" to the sublease, citing *Tenet Health Sys. Hosps. Dallas*, 438 S.W.3d at 198 ("The sublease may become valid and binding by either the agreement, acquiescence or ratification of the lessor."). The language in the opinion that St. Anthony's relies on for this argument does not stand for the proposition that a landlord's acquiescence creates a landlord-tenant relationship between the lessor and the sublessee. The court of appeals merely noted that a sublessee cannot avoid its obligations under a sublease merely because the lessor did not give its consent. *Id*. The court acknowledged that when a landlord is not a party to a sublease, there is no privity of contract between the landlord and sublessee. *Id*.

St. Anthony's also argues that it was a holdover tenant because it was a subtenant that continued to occupy subleased space after the master lease was terminated. Presuming that St. Anthony's was a holdover tenant, there are two types in Texas: a holdover tenant at will and a holdover tenant at sufferance. *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 915 (Tex. 2013). A holdover tenant at will has the landlord's consent to remain in the property, *id*., which was lacking here. A holdover tenant at sufferance, on the other hand, lacks the landlord's consent, and the landlord may treat that tenant as a trespasser unless the lease provides otherwise. *Id*. at 915-16.

[6] Under chapter 92, "landlord" is defined as "the owner, lessor, or sublessor of a dwelling, but does not include a manager or agent of the landlord unless the manager or agent purports to be the owner, lessor, or sublessor in an oral or written lease." Tex. Prop. Code § 92.001(2). "Tenant" is defined as "a person who is authorized by a lease to occupy a dwelling to the exclusion of others and . . . who is obligated under the lease to pay rent." *Id*. § 92.001(6).

case involved a residential tenancy.[7] *Id*. at 777. Nicholson argues that chapter 92 definitions do not apply to chapter 93 cases. Even if we were to conclude that the definitions were applicable here, which we decline to do, they merely describe parties that can create a landlord-tenant relationship. The relationship itself is still governed by the terms of the applicable lease. *See Two Briarlake Plaza*, 2016 WL 6462403, at *3.

Nicholson similarly argues that the trial court properly granted summary judgment as to St. Anthony's nuisance claim because Nicholson did not owe a duty to St. Anthony's absent a landlord-tenant relationship. Under these circumstances, we agree.

The law of nuisance recognizes that certain injuries to a person's right to the "use and enjoyment of property" can also constitute a form of legal injury for which a legal remedy will be granted. *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 594 (Tex. 2016). It is not a separate cause of action. *Id*. at 594, 600. To establish a cause of action for which the law provides a right to relief, at least in the absence of circumstances giving rise to strict liability, "there must not only be an injury or loss but it must have been occasioned by the commission of a legal wrong, that is, violation of legal right and a breach of legal duty."[8] *Id*. at 601.

The existence of a legal duty is a question of law for the court to decide from the facts surrounding the occurrence at issue. *Bujnoch v. Nat'l Oilwell Varco, L.P.*,

---

[7] In *Levine*, the trial court refused a jury question that asked whether the plaintiff was a tenant under an inapplicable statute. 625 S.W.2d at 778. The court of appeals concluded that the word "tenant" was used in the same context in both statutes and therefore concluded that the legislature intended "tenant" to have the same meaning as in the applicable statute. *Id*. The statutes at issue were previously codified under articles 5236d-f of the now repealed Texas Civil Statutes but have been recodified in the Property Code. *See* Tex. Rev. Civ. Stat. arts. 5236d, 5236e, 5236f.

[8] A defendant can be liable for creating a nuisance based on negligence or other culpable conduct. *Crosstex*, 505 S.W.3d at 601-02.

542 S.W.3d 2, 6 (Tex. App.—Houston [14th Dist.] 2017, pet. denied); *see also Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009). Texas law generally imposes no duty to take action to prevent harm to others absent certain special relationships or circumstances. *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 837 (Tex. 2000).

When EIC defaulted on its lease, it had no right of occupancy and thus could no longer confer a right of occupancy onto St. Anthony's. *See Tenet Health Sys. Hosps. Dallas*, 438 S.W.3d at 198. Because there is no landlord-tenant relationship or other special relationship between Nicholson and St. Anthony's, as a matter of law under these facts, Nicholson owed St. Anthony's no legal duty preventing Nicholson from conducting the lockout.[9]

Because there is no landlord-tenant relationship between Nicholson and St. Anthony's, we conclude the trial court did not err in granting summary judgment on St. Anthony's unlawful lockout and constructive eviction claims. We similarly conclude that the trial court did not err in granting summary judgment on the nuisance claim because Nicholson did not owe a legal duty to St. Anthony's to refrain from conducting the lockout.

**Tortious Interference Claim**

Nicholson argues that the trial court did not err in granting summary judgment on St. Anthony's tortious interference claim because Nicholson conclusively established it had a legal right to interfere with the sublease. We agree.

Even when a plaintiff presents evidence of each element of tortious interference, a defendant still may prevail by establishing the affirmative defense of

---

[9] St. Anthony's does not allege any kind of special relationship with Nicholson other than a landlord-tenant relationship.

justification. *Tex. Beef Cattle Co. v. Green*, 921 S.W.2d 203, 210 (Tex. 1996). If the trial court finds as a matter of law that the defendant had a legal right to interfere with a contract, then the defendant has conclusively established the justification defense. *Id*. A defendant generally establishes justification as a matter of law when the acts the plaintiff complains of as tortious interference are merely the defendant's exercise of its own contractual rights. *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 81 (Tex. 2000).

Nicholson presented evidence that the lease was assigned to the Trust, EIC failed to pay rent under the lease, and the Trust was entitled to assert its contractual right of lockout under the lease. Moreover, as discussed, under the lease, EIC was prohibited from subletting any of the space without prior written consent. Accordingly, the Trust exercised its contractual rights under the lease in conducting the lockout and conclusively established that it was legally justified in doing so.

We overrule St. Anthony's issues complaining of the trial court's grant of summary judgment.

### *Conclusion*

Because Nicholson conclusively established that no landlord-tenant existed between itself and St. Anthony's and it was legally justified in conducting the lockout, the trial court did not err in granting summary judgment in favor of Nicholson. We affirm the judgment of the trial court.


/s/    Martha Hill Jamison
       Justice


Panel consists of Justices Jamison, Wise, and Jewell.