# NO. 12-13-00262-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *WASSON INTERESTS, LTD.,*<br>*APPELLANT* | § | *APPEAL FROM THE 2ND* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *CITY OF JACKSONVILLE, TEXAS,*<br>*APPELLEE* | § | *CHEROKEE COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Wasson Interests, Ltd. (WIL) filed a motion for rehearing of our August 30, 2019 opinion. We overrule the motion for rehearing, withdraw our opinion and judgment of August 30, 2019, and substitute the following opinion and corresponding judgment in their place.

The Texas Supreme Court remanded this case to us to address the City of Jacksonville's grounds for summary judgment that remain unresolved after the Court determined that the City was not entitled to governmental immunity because it engaged in a proprietary function when it leased lakefront property on Lake Jacksonville to James and Stacy Wasson.[1] We affirm in part and reverse and remand in part.

## BACKGROUND

The City created Lake Jacksonville in the late 1950s as the City's reservoir to provide a municipal water supply. The City owns the lots surrounding the lake and decided to lease most of them for ninety-nine year terms for private residential development.

In the 1990's, the Wassons assumed an existing ninety-nine year lease on lot 43 and signed a ninety-nine year lease on lot 46 on the lake. The terms of both leases are identical in all relevant respects. The Wassons constructed a large home on lot 43 and a cabin on lot 46 in accordance

---

[1] *See* **Wasson Interests, Ltd. v. City of Jacksonville**, 559 S.W.3d 142, 154 (Tex. 2018) ("**Wasson II**").

with the authorizations in the leases. The Wassons first used lots 43 and 46 as their primary residence.

Both leases incorporated, and the Wassons expressly agreed to abide by, the Lake Jacksonville Rules and Regulations, as well as the city ordinances pertaining to building, sanitation, safety, use, and occupancy. Article VII, Section 10 of the rules and regulations states that failure to comply with the use and occupancy regulations and ordinances is grounds for forfeiture of the leases.

Article VII, Section 8 of the rules and regulations states in relevant part that "[a]ll Lake Jacksonville lease lots located outside of the city limits of the City of Jacksonville shall be restricted to residential purposes only. No business or commercial enterprise . . . shall be allowed to occupy any structure or operate from any lease lot outside the city limits." Lots 43 and 46 are located outside the Jacksonville city limits. The city ordinance pertaining to commercial activity authorizes limited home occupations conducted within a residential dwelling, but the authorized activities do not include those conducted by the Wassons in this case. The ordinance further provides that any business that does not fall within the authorized home occupations constitutes a prohibited commercial activity, thereby authorizing the City to issue a cease and desist order.

After relocating to Tyler in 2009, the Wassons conveyed their interest in the two lots to WIL. WIL rented the property to individuals for terms of a week or less. In response, the City sent an eviction notice for both lots, notifying WIL that its short-term rentals constituted a commercial use of the property, which violated its rules and regulations and zoning ordinances specified in WIL's leases.[2] The City agreed to excuse the past violations and cancel the eviction. In exchange, WIL entered into a reinstatement agreement with the City that imposed more specific conditions concerning the property's acceptable uses and occupancy limitations under the leases.

The reinstatement agreement provides that WIL cease and desist from all commercial activity on the property in violation of the City's ordinances and the Lake Jacksonville Rules and Regulations. The agreement also prohibited

> the advertisement or rental of any structure situated on the [properties] as a hotel, motel, inn, tourist house, tourist court, lodging house, rooming house, bed and breakfast, a vacation site, events site, multi-family or corporate retreat site, containing guest rooms and which is occupied, or intended or designed for occupancy by paying guests, whether rent is paid in money, goods, labor or otherwise.

---

[2] WIL twice unsuccessfully sought a variance from the Lake Jacksonville Advisory Board and the Jacksonville City Council to allow its commercial use of the two lots.

The reinstatement agreement contained an exception stating that:

> Nothing in this Agreement shall prohibit [WIL] from renting the [properties] to a single family consisting of one or more persons related by blood, marriage or legal adoption or a group of not more than three unrelated persons for private residential purposes, (same being defined as lease to a lessee, the term of which must be in excess of thirty (30) consecutive days).

Thereafter, the City discovered an advertisement to rent the large home on lot 43. On December 1, 2010, it sent notice to WIL that its advertisement and rental terms violated the reinstatement agreement, and as provided in the leases, that the City would terminate the leases if WIL failed to cease all commercial activity on the properties within ten days. Unsatisfied with WIL's response, on May 3, 2011, the City sent a second eviction notice based on WIL's alleged continued commercial use of the property.

WIL filed suit, alleging that the City breached the lease by improperly terminating the lease and evicting WIL. WIL also sought injunctive and declaratory relief. Following extensive discovery, the City filed a combined motion for a traditional and a no-evidence summary judgment, which the trial court granted without stating a reason. After two appeals to this Court and the Texas Supreme Court, the Texas Supreme Court ultimately held that the proprietary-governmental dichotomy applies to breach of contract suits against a municipality, and that the City acted in its proprietary capacity when it leased the lots to the Wassons.[3] Because we have not addressed the merits of the City's no-evidence motion for summary judgment, the Texas Supreme Court remanded the cause to us as part of this appeal.

## SUMMARY JUDGMENT - BREACH OF CONTRACT

In its first issue, WIL argues that it raised a fact issue on its breach of contract and wrongful eviction claims, and that the trial court erred when it granted summary judgment in favor of the City.

---

[3] *See* ***Wasson II***, 559 S.W.3d at 154; ***Wasson Interests, Ltd. v. City of Jacksonville***, 489 S.W.3d 427, 439 (Tex. 2016) ("***Wasson I***").

3

**Standard of Review**

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). An appellate court reviews a no-evidence summary judgment by reviewing "the evidence presented by the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 311 (Tex. 2009) (quoting *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006)).

A trial court must grant a no-evidence motion for summary judgment if: (1) the moving party asserts that there is no evidence of one or more specified elements of a claim or defense on which the adverse party would have the burden of proof at trial; and (2) the respondent produces no summary judgment evidence raising a genuine issue of material fact on each of the challenged elements. *See* TEX. R. CIV. P. 166a(i). No-evidence motions must be sustained when the record discloses one of the following situations: (a) a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence establishes conclusively the opposite of the vital fact. *Jelinek v. Casas*, 328 S.W.3d 526, 532 (Tex. 2010).

More than a scintilla of evidence exists if the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence. *Jelinek*, 328 S.W.3d at 532. When, as here, the summary judgment order does not specify the grounds on which it was granted, we will affirm a summary judgment ruling if any of the grounds asserted in the motion are meritorious. *See Lightning Oil Co. v. Anadarko E & P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017).

**Applicable Law**

The essential elements of a breach of contract claim are (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained as a result of the breach. *See Caprock Inv. Corp. v.*

4

*Montgomery*, 321 S.W.3d 91, 99 (Tex. App.—Eastland 2010, pet. denied). A breach of contract occurs when a party to the contract fails or refuses to do something that it has promised to do. ***B & W Supply, Inc. v. Beckman***, 305 S.W.3d 10, 16 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

The elements for wrongful eviction include (1) the existence of a valid unexpired lease; (2) the tenant's occupancy of the premises; (3) the landlord's eviction of the tenant; and (4) damages suffered by the tenant attributable to the eviction. ***St. Anthony's Minor Emergency Ctr., L.L.C. v. Ross Nicholson 2000 Separate Prop. Tr.***, 567 S.W.3d 792, 797 n.4 (Tex. App.—Houston [14th Dist.] 2018, pet. denied).

## WIL's Burden

As part of the City's hybrid motion for summary judgment, it alleged that there is no evidence to support WIL's breach of contract and wrongful eviction claims. It thus became WIL's burden to present evidence to raise a fact issue that the City breached the leases or the reinstatement agreement by evicting it without cause. To accomplish this, WIL must produce more than a scintilla of evidence that it did not materially breach the reinstatement agreement or the leases. The City alleges that WIL breached the reinstatement agreement in at least three respects: (1) WIL advertised the properties for use as a vacation rental; (2) WIL's rental scheme obligates a renter to a minimum stay of only one week; and (3) Wasson allowed his employees to stay at the properties in consideration for their labor.

As an initial matter, WIL contends that we should reverse the trial court's order granting summary judgment because the City attached evidence to its motion for summary judgment. We disagree. The City filed a single hybrid motion for summary judgment, attaching evidence to it. The fact that evidence is attached to a motion for summary judgment that combines traditional and no-evidence grounds does not mean that we can disregard the no-evidence portion of the motion. *See **Binur v. Jacobo***, 135 S.W.3d 646, 651 (Tex. 2004). Here, the City identified the essential elements for which it asserted its no-evidence motion as it was required to do. *See* TEX. R. CIV. P. 166a(i). The burden was then placed on WIL to create a fact issue. *See **id.*** For the remainder of this opinion, we address whether it met that burden.

## The Advertisement - Lot 43

The reinstatement agreement provides that WIL cease and desist from all commercial activity on the property in violation of the City's ordinances and the Lake Jacksonville Rules and

Regulations.  It also prohibits the advertisement or rental of the properties as a hotel, motel, inn, tourist house, tourist court, lodging house, rooming house, bed and breakfast, a vacation site, events site, multi-family or corporate retreat site, containing guest rooms intended to be occupied by paying guests.

The advertisement is on Vacation Rentals By Owner (VRBO.com), and is titled "Luxury Lakefront Mansion."  It was placed on the website after WIL and the City executed the reinstatement agreement.  The lengthy advertisement states in relevant part:

> This Mediterranean Styled Luxury Lake Property is a perfect getaway from city life and can accommodate a huge family. It is a complete DESTINATION for your enjoyment.  Here you can throw the coolest party you will ever want and your friends will love you forever if they are lucky enough to be invited.  Bring your band, your karaoke and your margarita machine!!!  You can also relax and enjoy lake activities, ski, kayak, fish, and even ride 4 wheelers around our neighborhood and on numerous trails on our own 11 acre estate or down numerous other nearby trails frequented by locals. You can dance on the back decks and dock.  You can have a big BBQ.  You can jump on the water trampoline and swim or watch everyone else while you sit perched on the deck.  You can also enjoy and pet our many organically raised animals that we raise on the upper three acre parcel.
> . . . .
> Families and friends that come from the city will love this blend of lake retreat and country farm.
> . . . .
> We encourage you to invite your family and friends to visit.  We no longer restrict our rentals to people over 25 so now even the younger college aged generation can let it all hang out.  Be sure to wear your college T-shirts especially if they are Texas schools like TCU, UT, or A&M!!!  We hope you enjoy your stay to its fullest.  There is ample parking on the West roadside of Moore Lane if you need it.  Monthly renters will be allowed to use the property in any legal way just as any other homeowner on the Lake Jacksonville.  We will not be limiting the number of people on our property at any given time of your rental.  Many Lake Jacksonville homeowners throw parties, even have bands especially on Memorial Day and other holidays.  Come and enjoy!!!  You won't find a cooler place!!!

This advertisement violates the above referenced provision in the reinstatement agreement that WIL cease and desist from the advertisement of the property as a tourist house, tourist court, lodging house, rooming house, bed and breakfast, a vacation site, events site, multi-family or corporate retreat site intended for occupancy and use of paying guests.  Accordingly, this advertisement constitutes a breach of the agreement as a matter of law as to lot 43.

The agreement provides that the parties release all claims against the other except for those growing out of enforcement of the Lake Jacksonville rules and regulations, any applicable city ordinances, or the terms and conditions of the lease agreements between the parties.  The leases state that all of the terms in the leases are an essential part of the consideration between the parties, and that any violation or default on WIL's part authorizes the City to terminate the leases, provided

that a ten-day written notice to cure the violation is given to WIL. Similarly, Article VII, Section 10 of the rules and regulations states that failure to comply with the use and occupancy regulations and ordinances is grounds for forfeiture of the leases.

The consideration for the reinstatement agreement was that the City agreed to reinstate the lease after previous violations by WIL and the subsequent eviction, so long as WIL agreed to cease advertising and renting the property as a vacation type tourist home. WIL agreed to abide by the terms of the reinstatement agreement, but nevertheless began advertising the property for the same purpose, which is not only a breach of the agreement, but also authorized the City to terminate the leases and evict WIL on lot 43.

**The Rental Scheme – Lot 43**

WIL contends that the advertisement and its rental practices fall within the safe harbor provision of the agreement that authorizes a lease to a group of not more than three unrelated persons for private residential persons, which the agreement defines as a lease to a lessee, the term of which must be in excess of thirty consecutive days.

The City replies that WIL's rental scheme obligates a renter to a minimum stay of only one week, which is a violation of the reinstatement agreement. We agree. The advertisement states that it is a monthly rental for $13,950 "which averages $3,150/week, [and] this is a monthly rental but discounts will be applied based on usage." The advertisement notes that "[m]onthly renters will be allowed to use the property in any legal way just as any other homeowner on the Lake Jacksonville." Dr. Wasson admitted that renters are obligated only to a minimum stay of seven days, and that if they sought to use the property for more than seven days, they would pay a daily rate of $350 for the desired number of days in excess of the minimum obligatory seven-day period.

WIL contends that the agreement does not require the lessee to actually occupy the property during the entire monthly term. However, the agreement requires any rentals must have a term that exceeds thirty consecutive days. A lease is "a transfer of interest in and possession of property for a prescribed period of time in exchange for an agreed consideration called rent." *Sisters of Charity of the Incarnate Word, Houston, Texas v. Meaux*, 122 S.W.3d 428, 431 (Tex. App.— Beaumont 2003, pet. denied). One of the hallmark rights in a lease is the exclusive right to possess the premises during the lease term. *See* TEX. PROP. CODE ANN. § 92.001(6) (West 2014) (defining "tenant" in residential lease as "a person who is authorized by a lease to occupy a dwelling to the exclusion of others and . . . who is obligated under the lease to pay rent"); *Camp Mystic, Inc. v.*

*Eastland*, 399 S.W.3d 266, 276 (Tex. App.—San Antonio 2012, no pet.) (stating that tenant has the exclusive possession of the leased premises for a fixed time). The owner's mere assent to the occupancy is not sufficient; allegiance to the title of "landlord" is one of the distinguishing characteristics of the landlord-tenant relationship. *Redgrave v. Schmitz*, 584 S.W.2d 374, 376 (Tex. Civ. App.—San Antonio 1979, no writ). No particular words are necessary to create such a relationship, "but it is indispensable that it should appear to have been the intention of one party to dispossess himself of the premises and of the other to occupy them." *City of Irving v. Seppy*, 301 S.W.3d 435, 445 n.2 (Tex. App.—Dallas 2009, no pet.).

The rental agreement employed by WIL here obligates a renter only for one consecutive week, and if the renter wished to have access to the property for more than those seven days, he or she must pay a fee for each day of use. Moreover, there is nothing preventing WIL from leasing the property to third parties during a month when a renter only occupied it for the minimum one-week period. This is not a private residential lease to a lessee for a term in excess of thirty days.[4] Consequently, this rental scheme is "monthly" in name only, and this rental practice does not trigger the safe harbor provision to excuse WIL's breach of the reinstatement agreement due to its advertising practices.

**Lot 46**

The City claimed in a letter notifying WIL of a violation of the reinstatement agreement for advertising for rental a "lakefront cabin with water trampoline" and "luxury lakefront mansion." As we have discussed, the "luxury lakefront mansion" advertisement is in the record and constitutes a violation of the agreement as to lot 43. However, the alleged "lakefront cabin with water trampoline" advertisement is not in the record. Consequently, WIL claims that the City breached the agreement and improperly evicted it on lot 46. The City argues that WIL waived consideration of this issue because this argument was raised for the first time on appeal. We disagree.

---

[4] The City also points to Dr. Wasson's deposition testimony that the rental periods in the advertisement were for thirty days, which is by definition not in excess of thirty days as required in the reinstatement agreement. However, he also stated that the rental period was for "whatever number the City required" in the agreement, and that he could not recall if it was thirty days or longer. The advertisement is for "monthly" rentals, which for some months would be in excess of thirty days, and thirty days or less for other months. In any event, we need not dwell on this argument since the advertisement and rental scheme violates the agreement authorizing termination of the lease and eviction on lot 43.

Issues a nonmovant contends avoid the movant's entitlement to summary judgment must be expressly presented by written answer to the motion or by other written response to the motion and are not expressly presented by mere reference to summary judgment evidence. *McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 341 (Tex. 1993); *see also* TEX. R. CIV. P. 166a(c). In a no-evidence motion for summary judgment, after the movant specifies the elements for which there is no evidence, the burden then shifts to the nonmovant to produce evidence raising a genuine issue of material fact on the elements specified in the motion. TEX. R. CIV. P. 166a(i); *Mack Trucks*, 206 S.W.3d at 582. The nonmovant is "not required to marshal its proof; its response need only point out evidence that raises a fact issue on the challenged elements." TEX. R. CIV. P. 166a(i), cmt.

WIL satisfied this burden. WIL's response to the City's motion included the issue that it complied with the reinstatement agreement, that it performed its obligations under the agreement, and that termination of the leases and eviction was improper. It specifically identified and attached evidence to its response to the motion, including James Wasson's deposition testimony. In it, he stated that he never rented either the large house or the cabin after the parties executed the reinstatement agreement. Furthermore, at times during Wasson's testimony, counsel referred to advertisements generally, but he was presented only with the advertisement for the large home and specifically questioned about that advertisement. As we have stated, there is no advertisement in the record for the cabin on lot 46. Accordingly, this ground was before the trial court, WIL presented more than a scintilla of evidence that it complied with the reinstatement agreement as to the cabin, and the City failed to conclusively negate it. WIL raised a fact issue as to whether the City's termination of the lease for lot 46 and eviction was improper.

## Gratuitous Employee Stays at the Properties

The City nevertheless contends that WIL violated the reinstatement agreement for both lots when it allowed employees to stay at both properties in consideration for their labor. James Wasson testified that he allowed employees, family, and friends to gratuitously stay at the properties from time to time. With respect to the employees, the City argues that Wasson and WIL allowed them to stay at the property in violation of the portion of the reinstatement agreement stating that WIL cannot rent the property as a vacation type home, "whether rent is paid in money, goods, *labor*, or otherwise."

9

However, there is no evidence in the record that he allowed employees to stay at the property in consideration for their labor, or that it was otherwise part of their compensation as employees of his medical practice. Instead, the only evidence in the record is that the Wassons allowed employees to gratuitously stay at the property if they asked and it was not in use by the Wassons or others, which is not a violation of the leases or the reinstatement agreement. Therefore, the City was without cause to terminate either lease and evict on this ground.

In summary, the City was authorized to terminate the lease and evict WIL on lot 43. However, WIL raised a fact issue concerning the City's termination and eviction of WIL's lease on lot 46. Therefore, WIL's first issue is sustained as to lot 46 and overruled as to lot 43.

## SUMMARY JUDGMENT - REMEDY

In its remaining issue, WIL argues that the leases and reinstatement agreement are ambiguous as to the remedy upon successful eviction by the City. As part of this issue, WIL argues that it should be awarded the equity in the permanent improvements it made to the properties.

### Applicable Law

We apply well-established rules of contract interpretation when construing the leases and subsequent contracts governing the parties' relationship. *See NP Anderson Cotton Exch., L.P. v. Potter*, 230 S.W.3d 457, 463 (Tex. App.—Fort Worth 2007, no pet.). In construing a written contract, our primary concern is to ascertain the true intention of the parties as expressed in the plain language of the contract. *N. Shore Energy, L.L.C. v. Harkins*, 501 S.W.3d 598, 602 (Tex. 2016) (per curiam). If a contract is unambiguous, its terms can be interpreted as a matter of law by the court. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). Where contract language is subject to two or more reasonable interpretations, it is ambiguous. *National Union Fire Ins. Co. v. CBI Indus., Inc.,* 907 S.W.2d 517, 520 (Tex. 1995). Whether a contract is ambiguous is a question of law for the court to decide by looking at the agreement as a whole in light of the circumstances present when the contract was entered. *Coker*, 650 S.W.2d at 394. We examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Id.* at 393. No single provision will control; rather, all provisions must be considered with reference to the whole instrument. *Id.*

**Discussion**

Paragraph Six of the leases authorizes the construction of improvements such as homes on the leased premises, and the lessee is given thirty days after the expiration of the primary term to remove any improvements made by the lessee if there has been no renewal. Under that provision, the lease specifies that any improvements remaining after the thirty-day period become the property of the City.

Paragraph Eight of the leases authorizes the City to cancel the lease in the event that the leased premises are necessary to effectuate the prime purpose of impounding, storing, and selling of water for industrial, municipal, and other lawful purposes. If the City exercises this power, the lessee is required to remove any improvements within six months thereafter.

In between these provisions, the leases specify in Paragraph Seven that each and all terms of the leases are essential, and any violation or default on the lessee's part shall be grounds for terminating the lease at the City's option. This paragraph requires the City to provide a written notice to the lessee and allow it ten days to cure the violation or default prior to terminating the lease. This paragraph is silent as to whether the tenant has a right to remove the improvements or whether they become the City's property upon termination.

Contrary to WIL's contention, we do not interpret the leases to be ambiguous in this regard. First, all three paragraphs are located sequentially in the leases. Second, Paragraphs Six and Eight specifically address the ownership of improvements and the lessee's right to remove the improvements in two fact scenarios—when the lease expires under its own terms and when the City must cancel the lease for the public purpose of its water supply function. Paragraph Seven, the applicable fact scenario here, when the lessee violates or defaults on the lease, is silent on these issues. Given that the leases specifically addressed these matters in other scenarios, we presume that the leases are intentionally silent on this issue. But this does not create an ambiguity because Texas fixture and improvements law provides that a permanent improvement to real property encompasses virtually anything that permanently enhances the value of the property and is placed on the land so that it is impossible to remove it or carry it away without injuring the property. *See, e.g., Corral-Lerma v. Border Demolition & Envtl. Inc.*, 467 S.W.3d 109, 124 (Tex. App.—El Paso 2015, pet. denied); *Big West Oil Co. v. Willborn Bros. Co.*, 836 S.W.2d 800, 803 (Tex. App.—Amarillo 1992, no writ). A home on a foundation is generally a permanent fixture and improvement that cannot be removed without injury to the land. *See Dennis v. Dennis*, 256

11

S.W.2d 964, 966 (Tex. Civ. App.—Amarillo 1952, no writ). Ordinarily, unless the parties contract otherwise, the permanent improvement passes with the land to the lessor after termination of the lease. *See Travis Cent. Appraisal Dist. v. Signature Flight Support Corp.*, 140 S.W.3d 833, 838 (Tex. App.—Austin 2004, no pet.). That is the result here when a tenant such as WIL breached the lease and the City followed the procedures stated in the lease, electing to terminate and evict WIL.

However, that does not end our inquiry. WIL contends that it should retain the equity for the improvements it made on the City's land. Ordinarily, the landlord in a residential lease provides not only the land, but the dwelling or tenement to the tenant. In these leases here, the City provided only the land, and the leases authorized the tenant to construct permanent homes and other improvements. In this unusual scenario, WIL has been lawfully evicted on lot 43, but the City retains ownership of the home and other improvements for which the Wassons expended a vast sum of money.

The principle is established that a party who in good faith makes improvements to property owned by another is entitled to compensation therefor. *See Wagner & Brown, Ltd. v. Sheppard*, 282 S.W.3d 419, 425–26 (Tex. 2008). In *Wagner*, the court went on to note that this is an equitable doctrine, each case turns on its own facts, and "a breaching party is not necessarily barred from reimbursement for improvements." *See id.* at 472-28. For instance, one who intentionally terminates a lease has a weaker claim to equity than one who does so by accident. *Id.* at 428. On the other hand, one who immediately offers to reinstate an expired lease has cleaner hands than one who does not. *Id.* "As with other equitable actions, a jury may have to settle disputed issues about what happened, but the expediency, necessity, or propriety of equitable relief is for the trial court." *Id.* at 428-29.

The very purpose of the leases was to authorize the lessee to construct private residences on the lots, as contemplated in the leases' terms. Consequently, the Wassons in good faith made significant improvements to the City's property with the City's knowledge and approval. The City would be unjustly enriched under these facts to retain the full value of these extensive improvements without providing any compensation to WIL. *See Eun Bok Lee v. Ho Chang Lee*, 411 S.W.3d 95, 112-13 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (holding tenant entitled to recover value of permanent gasoline tanks, walk in cooler, and vapor recovery system he purchased

12

and installed to construct and operate gas station with landlord's consent upon termination of lease).

Under such circumstances, the court may grant relief in several ways. For example, when, as here, the improvement cannot be removed without great injury to the improvement or to the land, the court may: (1) award WIL the amount of the enhanced value of the land, which is the difference in market value before and after the making of the improvements; (2) allow WIL to pay the City the value of the land before the improvements were placed and become the owner of the land and improvements if the City is unable or unwilling to pay WIL the amount of the enhanced value of the land; (3) order the land and improvements sold and the money divided between the City and WIL if the City is unable or unwilling to pay WIL the amount of the enhanced value of the land and WIL is unable to pay for the land; or (4) give WIL a judgment for the amount of enhancement together with a lien against the property. *See **Producers Lumber & Supply Co. v. Olney Bldg. Co.***, 333 S.W.2d 619, 624 (Tex. Civ. App.—San Antonio 1960, writ ref'd n.r.e.); *see also* 44 Tex. Jur. 3d *Improvements to Realty* § 6 (2013).

However, as we have noted, there may be other considerations in the amount to be awarded within the trial court's discretion, such as the parties' conduct. The record has not been developed on this issue. Even though WIL breached the lot 43 lease, and the City lawfully evicted it, WIL is entitled to some measure of equitable reimbursement. Therefore, remand is appropriate on this issue to determine the nature, scope, and extent of reimbursement considering all the equities in this case.

WIL's second issue is sustained in part and overruled in part.

## SUMMARY JUDGMENT – REMAINING ISSUES

The City also moved for summary judgment on various issues such as WIL's claims for declaratory judgment, injunctive relief, attorney's fees, and exemplary damages. We dispose of each of these in turn.

### Declaratory Judgment

WIL sought three declarations in its declaratory judgment action: (1) that its proposed rental practices and advertising for rental of the subject property do not violate the lease agreements, city ordinances, rules and regulations of Lake Jacksonville or the reinstatement agreement; (2) the lease agreements, city ordinances, rules and regulations of Lake Jacksonville

do not prohibit short term rentals of the subject property; and (3) it retains its equity in the improvements on the subject property upon eviction. WIL acknowledges that the first declaration is resolved by its breach of contract action. WIL abandons its request for the second declaration because, unlike other lessees on Lake Jacksonville, it is subject to the reinstatement agreement.[5] WIL still pursues its third declaration, which we have held will be resolved by the trial court on remand.

## Injunctive Relief

WIL acknowledges in its brief that its application for permanent injunctive relief depends on the resolution of its breach of contract and wrongful eviction claims. Because we have held that WIL failed to raise a fact issue on its breach of contract and eviction claim on lot 43, WIL is not entitled to the injunctive relief it requested as a matter of law. Nevertheless, we have likewise held that WIL raised a fact issue as to the termination and eviction on lot 46, and WIL may continue to pursue injunctive relief, if appropriate, on remand.

## Exemplary Damages

WIL concedes that summary judgment was appropriate on its claim for exemplary damages, citing authority holding that a plaintiff cannot recover exemplary damages in a breach of contract action, even if intentionally breached. *See Jim Walter Homes, Inc. v. Reed*, 711 S.W. 617, 618 (Tex. 1986). We agree. The trial court properly granted summary judgment barring WIL's recovery of exemplary damages.

## Attorney's Fees

WIL also concedes that summary judgment was appropriate on its request for attorney's fees on its breach of contract claim because a governmental entity is not an "individual" or "corporation" under Texas Civil Practice Remedies Code Section 38.001. We agree.

"A municipality may not be considered a corporation under a state statute governing corporations unless the statute extends its application to a municipality by express use of the term

---

[5] During the pendency of this appeal the Supreme Court of Texas decided *Tarr v. Timberwood Park Owners Ass'n*, holding "single family residence" and "solely for residential purposes" deed restrictions did *not* prohibit the owner from engaging in short term rentals. 556 S.W.3d 274, 287, 291 (Tex. 2018). WIL acknowledges that *Tarr* is not applicable here because in consideration for reinstating the lease after eviction, but prior to the court's opinion in *Tarr*, WIL agreed to be bound by the reinstatement agreement. This agreement contains specific and independent obligations beyond the scope of the restrictive covenants in *Tarr*. Unlike the reinstatement agreement here, the covenants in *Tarr* "fail to address leasing, use as a vacation home, short-term rentals, minimum-occupancy durations, or the like." *Id.* at 290.

'municipal corporation,' 'municipality,' 'city,' 'town,' or 'village.'" TEX. LOC. GOV'T CODE ANN. § 5.904(a) (West 2008). The statute further clarifies that "[i]t is the intent of the legislature that the limitation provided by this section apply regardless of whether the municipality is acting in a governmental or proprietary function." *See id.* § 5.904(b). This statute effectively amends Section 38.001 so that it no longer authorizes the award of attorney's fees against a municipality under that statute. *See, e.g., **City of Corinth v. NuRock Dev. Inc.**,* 293 S.W.3d 360, 370 (Tex. App.—Fort Worth 2009, no pet.); ***City of Alton v. Sharyland Water Supply Corp.**,* 277 S.W.3d 132, 147 (Tex. App.—Corpus Christi 2009) (noting that a municipality is "not considered a corporation even when it is acting in its proprietary function"), *aff'd in part and rev'd in part on other grounds*, ***Sharyland Water Supply Corp. v. City of Alton**,* 354 S.W.3d 407 (Tex. 2011).

WIL similarly concedes that it may not recover attorney's fees under its declaratory judgment action because its contract claims are its central theory of relief, and its declaratory judgment claim is merely incidental to that theory of relief. We agree. *See **Jackson v. State Office of Admin. Hearings**,* 351 S.W.3d 290, 301 (Tex. 2011); ***MBM Fin. Corp. v. Woodlands Operating Co.**,* 292 S.W.3d 660, 669 (Tex. 2009). Accordingly, the trial court properly granted summary judgment against WIL's request for recovery of its attorney's fees.

## WIL's Contentions on Rehearing are Untimely

WIL argues on rehearing that the City was required to plead and prove the affirmative defense of "excuse by prior breach," and that consequently the summary judgment burdens we described in our opinion are reversed. *See **TLC Hosp., LLC v. Pillar Income Asset Mgmt., Inc**.,* 570 S.W.3d 749, 763 (Tex. App.—Tyler 2018, pet. denied); ***Compass Bank v. MFP Fin. Servs., Inc.**,* 152 S.W.3d 844, 852 (Tex. App.—Dallas 2005, pet. denied) ("[T]he contention that a party to a contract is excused from performance because of a prior material breach by the other contracting party is an affirmative defense that must be affirmatively pleaded."). Moreover, its argument continues, because the City failed to plead and prove this defense, summary judgment was improper. *See id.* The City responds that the "excuse by prior breach" defense applies only when the City also breached the agreement, but the breach is excused by WIL's prior breach. The City argues that it did not breach the Reinstatement Agreement or the lease, but rather it simply exercised its right to terminate the lease because WIL breached the agreement, and that consequently there was no breach to excuse on the City's part. *See, e.g., **AME & FE Investments, Ltd. v. NEC Networks, LLC**,* No. 04-17-00332-CV, 2019 WL 286121, at *6 (Tex. App.—San

Antonio Jan. 23, 2019, no pet.) (mem. op.) (holding that excuse by prior breach did not apply because there was no breach by party, and without breach there is nothing to excuse).

WIL also argues that the above referenced VRBO advertisement cannot serve as the basis of termination because the City recited in its December 14, 2010 letter that it thanked WIL for removing the VRBO advertisement. The City responds that the remainder of the letter, along with WIL's response to the motion for summary judgment, and Dr. Wasson's deposition testimony WIL attached in support of its response to the motion, all establish that there was another improper advertisement that remained online that served as the basis for termination. The City also responds that WIL conclusively admitted to advertising the property for short-term rentals during the relevant period.

WIL's argument during the entirety of this dispute has been an acknowledgement that it advertised the property after it executed the Reinstatement Agreement, but that the advertisements do not breach the agreement because they were for monthly rentals. Specifically, WIL's response to the City's no-evidence motion for summary judgment stated as follows:

> During the relevant period [after the parties executed the Reinstatement Agreement, WIL] advertised the rental of the properties for a minimum of a 30-day rental period. Exhibit A [Dr. Wasson's deposition testimony]. The price to be charged a prospective renter would be determined by the amount of usage during the 30-day period. *Id.* The minimum charge for a monthly rental was $3,500.00, which paid for one week's worth of usage. *Id.* Additional usage within the monthly rental required additional payment."

WIL concluded in the response that this advertisement and rental scheme were within the safe harbor provision of the Reinstatement Agreement, or at least, "whether these advertisements were in compliance with the Reinstatement Agreement is a pure question of fact for a jury to decide."

In WIL's appellate brief, it stated that after the parties executed the Reinstatement Agreement that it "began advertising the properties for monthly rentals and charging a minimal usage rate of $3,500 for a week, with an additional usage rate of $350.00 per day thereafter." Again, WIL's argument on appeal was that this advertising practice complied with the Agreement. In making this argument, it also referenced the VRBO advertisement. WIL went on to explain that "[a]s even [the City] acknowledged, whether or not [WIL's] advertisements violated the Reinstatement Agreement is really the crux of this lawsuit. [WIL] earnestly believes the above described [VRBO advertisement] was in conformity with the Reinstatement Agreement and would like to have a jury of its peers decide this purely factual question."

16

Finally, after ***Wasson I*** and ***Wasson II***, the parties provided supplemental briefing on the merits of the City's no-evidence motion for summary judgment. WIL's arguments and legal and factual theories in this regard remained unchanged. We disposed of the arguments as they were presented to us in the record and the briefs.

In our review of a summary judgment, "[i]ssues not expressly presented to the trial court by written motion, *answer or other response* shall not be considered on appeal as grounds for reversal." ***Wells Fargo Bank. N.A. v. Murphy***, 458 S.W.3d 912, 916 (Tex. 2015) (emphasis added) (citing TEX. R. CIV. P. 166a(c) (West 2015)). The term "issues" in the summary judgment context means "legal theories (i.e., grounds of recovery and defenses) and factual theories." ***Atl. Richfield Co. v. Exxon Corp.***, 663 S.W.2d 858, 863 (Tex. App.–Houston [14th Dist.] 1983), *rev'd on other grounds*, 678 S.W.2d 944 (Tex. 1984). However, we are mindful that briefs are to be construed liberally. *See* ***Lee v. Rogers Agency***, 517 S.W.3d 137, 164 (Tex. App.—Texarkana 2016, pet. denied). Accordingly, an appellate court may not reverse a summary judgment on the basis of "legal theories (i.e., grounds of recovery and defenses) and factual theories" not presented to the trial court, although it must address every "subsidiary question that is fairly included" within those legal and factual theories which were presented to the trial court, fully briefed on appeal, and which are necessary to final disposition of the appeal. *See* ***id.*** Similarly, a failure to assert a theory in response to an issue raised in a no-evidence motion will not result in a reversal of the summary judgment on that theory. *See, e.g.,* ***Durham v. Accardi***, No. 14-18-00060-CV, 2019 WL 5078801, at *5 (Tex. App.—Houston [14th Dist.] Oct. 10, 2019, no pet. h.) (op.) (affirming no-evidence motion for summary judgment because, although appellant adequately responded to motion on alter ego theory, nonmovant failed to include argument on issue in response to the motion or in his appellate brief on separate sham to perpetrate a fraud theory). Accordingly, because these theories were not addressed in response to the City's motion, presented to the trial court, or briefed as part of this appeal, they are not proper grounds upon which to reverse the trial court's summary judgment.

Separately, irrespective of these arguments' merits, they are made for the first time by new counsel in this almost decade long litigation on rehearing after we issued our original opinion. As the City points out, at this juncture of the litigation, WIL raised these new factual and legal theories too late. Generally, we do not base our rulings on arguments raised for the first time on rehearing. ***Wells Fargo Bank, N.A. v. Leath***, 425 S.W.3d 525, 540 (Tex. App.—Dallas 2014, pet.

17

denied) (supp. op. on reh'g); ***AVCO Corp. v. Interstate Sw., Ltd.***, 251 S.W.3d 632, 676 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (supp. op. on reh'g); *see **Sherrod v. Moore***, 819 S.W.2d 201, 205 (Tex .App.—Amarillo 1991, no writ) ("It is well established that points of error raised for the first time in a motion for rehearing are too late and will not be considered.") (citing ***Morrison v. Chan***, 699 S.W.2d 205, 207 (Tex. 1985)). The sole purpose of a motion for rehearing is to provide the court an opportunity to correct any errors on issues already presented. ***Wentworth v. Meyer***, 839 S.W.2d 766, 778 (Tex. 1992) (Cornyn, J., concurring). "Rehearing is not an opportunity to test alternative arguments after finding other arguments unsuccessful." ***OAIC Commercial Assets, L.L.C. v. Stonegate Vill.***, *L.P.,* 234 S.W.3d 726, 746 (Tex. App.—Dallas 2007, pet. denied) (op. on reh'g). An issue adequately briefed in a motion for rehearing is waived if the original brief "is not sufficient to acquaint the Court with the issue and does not present an argument that would allow the court to decide the issue." ***Wheeler v. Methodist Hosp.***, 95 S.W.3d 628, 646 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

"A motion for rehearing does not afford a party an opportunity to raise new issues after the case has been briefed, argued, and decided on other grounds unless the error is fundamental." ***OAIC***, 234 S.W.3d at 747; *see **Tex. Mun. Power Agency v. Public Util. Comm'n of Tex.***, 150 S.W.3d 579, 591 n.13 (Tex. App.—Austin 2004), *rev'd in part on other grounds,* 253 S.W.3d 184 (Tex. 2007). Fundamental error exists "in those rare instances in which the record shows the court lacked jurisdiction or that the public interest is directly and adversely affected as that interest is declared in the statutes or the Constitution of Texas." ***Pirtle v. Gregory***, 629 S.W.2d 919, 920 (Tex. 1982); *see **OAIC***, 234 S.W.3d at 747; ***Texas Mun. Power***, 150 S.W.3d at 591 n.13. In WIL's motion for rehearing, it does not raise an issue of fundamental error, and we decline to address the new arguments it asserts for the first time in its motion for rehearing. Accordingly, we overrule WIL's motion for rehearing.

## DISPOSITION

We have overruled the portion of WIL's first issue pertaining to lot 43, holding that it failed to raise a fact issue on its breach of contract and wrongful eviction claims, and that the trial court properly granted summary judgment against it in favor of the City. In accordance with WIL's concessions, we have also held that the trial court properly granted summary judgment on WIL's declaratory judgment action (with the exception of the declaration that it retained its equity in the

improvements made to the properties), its application for injunctive relief on lot 43, and its requests for attorney's fees and exemplary damages. Accordingly, we *affirm* the trial court's order granting summary judgment in those respects.

However, we have sustained the portion of WIL's first issue related to the City's breach of contract and eviction of WIL on lot 46, holding that WIL raised a fact issue concerning the lease termination and eviction from the cabin on lot 46. Because of our disposition of this portion of WIL's first issue, we have also held that it may pursue its application for injunctive relief. Furthermore, we have held that under the unique circumstances here, it would be inequitable for the City to retain the full value of the improvements made by WIL on lot 43. Therefore, we *reverse* that portion of the trial court's order granting summary judgment in those respects and *remand* the case for a determination of WIL's equitable reimbursement remedy, and for further proceedings consistent with this opinion.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered December 31, 2019.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

19



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**DECEMBER 31, 2019**

**NO. 12-13-00262-CV**

**WASSON INTERESTS, LTD.,**
Appellant
V.
**CITY OF JACKSONVILLE, TEXAS,**
Appellee

Appeal from the 2nd District Court
of Cherokee County, Texas (Tr.Ct.No. 2011-05-0389)

THIS CAUSE came to be heard on the appellate record and the briefs filed herein, and the same being considered, because it is the opinion of this court that there was error in the judgment of the court below insofar as the trial court granted summary judgment in favor of the City of Jacksonville as to the lease termination and eviction against Wasson Interest, Ltd. on lot 46 of Lake Jacksonville. It is also the opinion of this court that there was error in the judgment insofar as the trial court failed to determine and order equitable reimbursement by the City of Jacksonville to Wasson Interests, Ltd., after its proper lease termination and eviction of Wasson Interests, Ltd. on lot 43 of Lake Jacksonville.

It is therefore ORDERED, ADJUDGED and DECREED by this court that the portion of the trial court's order granting summary judgment in those respects be **reversed** and the

cause be **remanded** for a determination of WIL's equitable reimbursement remedy and **for further proceedings** consistent with this opinion.

It is further ORDERED, ADJUDGED and DECREED that, in all other respects, the trial court's judgment is **affirmed**; all costs of this appeal be assessed one-half against the Appellant, **WASSON INTEREST, LTD**., and one-half against the Appellee, **THE CITY OF JACKSONVILLE**, for which execution may issue; and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

# THE STATE OF TEXAS
# M A N D A T E

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**TO THE 2ND DISTRICT COURT OF CHEROKEE COUNTY, GREETING:**

Before our Court of Appeals for the 12th Court of Appeals District of Texas, on the __nd day of December, 2019, the cause upon appeal to revise or reverse your judgment between

**WASSON INTERESTS, LTD., Appellant**

**NO. 12-13-00262-CV; Trial Court No. 2011-05-0389**

Opinion by James T. Worthen, Chief Justice.

**CITY OF JACKSONVILLE, TEXAS, Appellee**

was determined; and therein our said Court made its order in these words:

"Text goes here."

**WHEREAS, WE COMMAND YOU** to observe the order of our said Court of Appeals for the Twelfth Court of Appeals District of Texas in this behalf, and in all things have it duly recognized, obeyed, and executed.

**WITNESS, THE HONORABLE JAMES T. WORTHEN**, Chief Justice of our Court of Appeals for the Twelfth Court of Appeals District, with the Seal thereof affixed, at the City of Tyler, this the xx day of December, 2019.

KATRINA MCCLENNY, CLERK

By: _Katrina McClenny_
Chief Deputy Clerk